SARAH BELL *et al.*

*v.*

NELS O. CASSEM.

*Filed at Ottawa October 11, 1895.*

1. MORTGAGES—*lien of, not postponed to that of judgment under Dram-shop act.* The lien of a prior mortgage upon property is not postponed to that of a subsequent judgment, recovered under section 10 of the Dram-shop act, for damages in consequence of the sale of liquors on the mortgaged premises.

2. DRAM-SHOPS—*who is an "owner" of premises, within section 10 of Dram-shop act.* The provision of the Dram-shop act (sec. 10) making the building and premises where intoxicating liquors are sold with permission of the owner, liable to sale under a judgment against the occupant for damages from the sale of such liquors, applies only to such owners as have a rentable interest in the property, and not to a contingent interest, such as that of a mortgagee.

*Bell* v. *Cassem*, 56 Ill. App. 260, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kendall county; the Hon. CLARK W. UPTON, Judge, presiding.

At the October term, 1892, of the circuit court of Kendall county, a bill was filed by defendant to foreclose a certain mortgage dated December 21, 1889, executed by Albertina Helmuth, and Jacob, her husband, on certain real estate in Yorkville, Illinois, given to secure a note for $2000. To this bill plaintiffs in error, consisting of Sarah Bell and her five children, were made parties defendant, for the reason, as it appears, that on December 22, 1891, they had recovered a judgment against Jacob Helmuth and Albertina Helmuth for damages suffered by reason of the death of the husband of Sarah Bell, caused by the sale to him of intoxicating liquors by Jacob Helmuth, who occupied and used the mortgaged premises as a saloon. Plaintiffs in error filed their answer to the bill in foreclosure, and also their cross-bill, by which they sought to subject the mortgaged premises to the lien of their judgment, rendered in 1891, and declared superior to the mortgage of Cassem, given in 1889.

The answer and cross-bill in substance set forth that the premises in question, known as the "City Hotel," in Yorkville, were owned and occupied by Albertina and Jacob Helmuth, who were engaged in the business of selling intoxicating liquors, and that at the time of taking the mortgage in question, and at all times thereafter, the defendant in error, Cassem, had knowledge of this fact, and knowingly permitted the same to be so used; that by reason of the sale by the Helmuths to the husband of plaintiff in error Sarah Bell, he became intoxicated and lost his life by drowning, on account of which plaintiffs in error had recovered judgment for $5000, as above stated; that execution had been issued thereon March 4, 1892, and a levy made on the mortgaged premises, and ask that the mortgage be declared subordinate to the judgment.

Exceptions were filed in the trial court to the answer and to the answer of the guardian *ad litem,* which were in substance the same, and demurrer to the cross-bill, which were sustained by the court and the cross-bill dismissed for want of equity. Decree of foreclosure was entered on the original bill, finding the amount due defendant in error, ordering sale of the premises, and finding that the interest of the plaintiffs in error accrued since the mortgage lien of Cassem. On appeal to the Appellate Court for the Second District this decree was affirmed, and from that judgment this writ of error is prosecuted to this court.

BENJAMIN F. HERRINGTON, for plaintiffs in error:

The title of the Dram-shop act of 1874 is as follows: "An act to provide for the licensing of and against the evils arising from the sale of intoxicating liquors."

The Supreme Court of Iowa, in the case of *McClure* v. *Braniff,* 75 Iowa, 38, used these words: "While the lien does not attach until judgment is rendered, yet the right to a lien cannot be defeated by a conveyance of the property pending litigation to enforce it." In the same case that court refers to *O'Brien* v. *Putney,* 55 Iowa, 292, as holding the same way.

In the case of *Wing* v. *Benham,* 76 Iowa, 17, the Supreme Court held that the effect of the law is to subject the property to the judgment when the unlawful act or business on which it is based was done or carried on with the knowledge and consent of the owner.

As to Nels O. Cassem being the owner of the freehold, these cases are in point: *Moore* v. *Titman,* 44 Ill. 370; *Vallette* v. *Bennet,* 69 id. 635; *Oldham* v. *Pfleger,* 84 id. 103; *Nelson* v. *Pinegar,* 30 id. 481; *Carroll* v. *Ballance,* 26 id. 16; *Johnson* v. *Watson,* 87 id. 541; *Barrett* v. *Hinckley,* 124 id. 42.

In *Vallette* v. *Bennett, supra,* the Supreme Court said : "The doctrine of the English law was, the mortgagee was the owner of the whole legal estate in the mortgaged premises."

Randall Cassem, and McDougall & Chapman, for defendant in error:

The statutes will not be construed to make liable those having only reversionary and contingent interests, and who do not control the letting. 3 Lawson on Rights, Rem. and Pr. sec. 1131; *Castle* v. *Fogerty*, 19 Ill. App. 442.

Until the commencement of the suit against him for that purpose, the judgment creditor acquires no interest in the property; and if, before the suit is brought, it has been sold and conveyed, it cannot be subjected to the payment of such judgment. 3 Lawson on Rights, Rem. and Pr. sec. 1132; *Bellinger* v. *Griffith*, 23 Ohio St. 619.

The principle underlying this case is laid down in the case of *Castle* v. *Fogerty*, 19 Ill. App. 442.

Mr. Justice Phillips delivered the opinion of the court:

The question presented in this court requires a construction of section 10 of the Dram-shop act, which is as follows: "For the payment of any judgment for damages and costs that may be recovered against any person in consequence of the sale of intoxicating liquors under the preceding section, the real estate and personal property of such person, of every kind, except such as may be exempt from levy and sale upon judgment and execution, shall be liable, and such judgment shall be a lien upon such real estate until paid; and in case any person shall rent or lease to another any building or premises to be used or occupied, in whole or in part, for the sale of intoxicating liquors, or shall knowingly permit the same to be so used or occupied, such building or premises so used or occupied shall be held liable for and may be sold to pay any such judgment against any person occupying such building or premises." 1 Starr & Curtis, p. 973.

It is contended, from the fact that this act makes the building and premises liable where the owner permits their use for the sale of intoxicating liquors, and provides

that the judgment thus recovered shall be a lien, and the premises shall be held liable for and may be sold to pay such judgment, that therefore a judgment recovered under this act is a paramount lien to a mortgage upon the building where the liquors were sold, notwithstanding the mortgage bears a prior date of execution and recording to the rendition of the judgment. This statute will not bear the construction attempted to be deduced from it, that if one loans or advances money on property which is or afterwards may be used and occupied for dealing in intoxicating liquors, his mortgage lien shall be subordinated to that of a judgment which may at some later date be recovered against the owner of such property. There can be no doubt, from a consideration of this section, that it was the evident intention of the legislature to make only owners of property, and those having rentable interests, amenable to the provisions of the act. A mortgagee, by virtue of his mortgage only, and before any condition broken, has no legal right to rent or lease the encumbered premises to any person or for any purpose. Having no such control over it he can not be said to permit the premises to be occupied for any purpose. If premises on which money has been loaned and a mortgage executed should at some time thereafter be leased or rented by the mortgagor for dealing in intoxicating liquors, the law does not recognize the right of the mortgagee to compel the vacation of such premises without some clause in the mortgage giving such power. Until some condition of the mortgage is broken the control of the mortgagor is as absolute, except in the permitting or committing of waste, as if no mortgage lien existed. At the time the mortgage in this case was executed the cause of action of plaintiffs in error had not accrued, and it could not be anticipated that it ever would. To hold that a judgment recovered on such a subsequently accrued cause of action should precede a former mortgage lien, would have the effect, in many cases, as in this, to absolutely nullify the mortgage, as

the premises would be absorbed in the satisfaction of a large judgment. The large commercial transactions and interests of the country and the interchange of capital demand the borrowing of money and the securing of the same by real estate mortgage, and a mortgagee is compelled to rely upon the condition of the title as shown by the records at the time of the advancement. It would be entirely against public policy to hold that a judgment on a subsequently accrued cause of action should defeat a lien otherwise valid. No investor could safely advance capital if such were the law. Until the commencement of a suit in some cases, and the rendition of a judgment in most others, the judgment creditor acquires no interest in the property, and if, before the suit is brought, it has been sold and conveyed, it can not be subjected to the payment of such judgment. *Bellenger* v. *Griffith*, 23 Ohio St. 619.

In the case last cited a judgment was recovered, under a statute similar to our own, against a tenant who occupied the premises and used them for the purpose of selling intoxicating liquors. After the recovery of the judgment a suit was instituted against the owners of the property at the time of the unlawful sale of the liquor, to subject the real estate to the payment of the judgment. Meanwhile, after the recovery of the judgment against the tenant, but before this proceeding was instituted, the premises had been sold, in apparent good faith, to a third party, and it was held by the court that the title passed free from any lien of the judgment. It was contended by the plaintiff that the judgment against the tenant who unlawfully sold the liquor became a lien on the property from the time the cause of action accrued. The court said: "It is true the statute declares that the property shall be held liable for the damages assessed against the occupier. But this liability is not spoken of in the sense of creating a lien. * * * To give the statute the construction contended for would go far towards rendering

titles insecure.   No one could safely purchase real estate on the faith of its appearing from the public records to be clear of liens and incumbrances.   A purchaser would be compelled to take the risk of ascertaining who had been the previous occupiers of the premises, and whether any judgments or causes of action existed against them for the unlawful use of the property while in possession. Surely no such innovation upon the policy of the State in regard to requiring liens upon real property to appear of record could have been intended, without an explicit legislative declaration to that effect."

If it should be held that one holding a judgment rendered on a cause of action similar to that of plaintiffs in error was entitled to a superior lien to that of a prior mortgage on the premises in which the liquor was sold, then by the same reasoning it must be held that such judgment would be a valid lien as against a purchaser of the same property, although the conveyance was made before the rendition of the judgment.   The adoption of such a rule would not be the legitimate result of the construction of the statute under consideration, but would be judicial legislation by which a priority of liens would be declared and determined without legislative action on which to base the same, and would permit conspiring and fraudulent owners of property to defeat a mortgage lien or valid conveyance of their property by collusion with other parties claiming a cause of action under this statute.

We hold, therefore, that the true construction of this section of the statute is, that it applies only to owners or those having a rentable interest in the property, and not a contingent interest such as is that of a mortgagee. It was not error, therefore, for the Appellate Court to affirm the decree of the circuit court, and the judgment of the Appellate Court for the Second District is affirmed.

*Judgment affirmed.*