(No. 39953.—▮▮▮▮▮▮▮▮)

ILLINOIS NATIONAL BANK, Trustee, Appellee, *vs.* JUNE A. CHEGIN, Appellant.

*Opinion filed September 23, 1966.*

PRESNEY AND CASPER, of Springfield, for appellant.

DRACH, TERRELL and DEFFENBAUGH, of Springfield, (GEORGE E. DRACH, of counsel,) for appellee.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

This is a suit for specific performance brought by the Illinois National Bank, plaintiff-vendor, against June Chegin, defendant-vendee, to enforce a contract entered into on October 15, 1965, for the sale of a small apartment building situated in Springfield. Defendant had refused to perform the contract and in her pleading alleged that the abstract of title tendered by plaintiff did not show merchantable title for the reason that it did not negate the existence of liens, or possible liens, arising under the property forfeiture provisions of article 37 of the Criminal Code. (Ill. Rev. Stat. 1965, chap. 38, art. 37.) The circuit court of Sangamon County granted plaintiff's motion for judgment on the pleadings and entered a decree of specific performance. Defendant has been allowed to appeal directly to this court pursuant to Rule 28—1E. Ill. Rev. Stat. 1965, chap. 110, par. 101.28—1E.

By section 37—1 of the Criminal Code, which was added by an act approved July 2, 1965, the legislature has declared to be a public nuisance any building "used in the commission" of the offenses of murder, kidnapping, prostitution, theft, gambling, abortion, narcotics violations and other specified crimes, and has provided that any person convicted of knowingly maintaining such a public nuisance shall be subject to fine or imprisonment, or both. Section 37—2, which is titled "Enforcement of Lien upon Public Nuisance," then goes on to provide: "Any building, used in the commission of an offense specified in Section 37—1 of this Act with the intentional, knowing, reckless or negligent permission of the owner thereof, or the agent of the owner

managing the building, shall, together with the underlying real estate, all fixtures and other property used to commit such an offense, be subject to a lien and may be sold to pay any unsatisfied judgment that may be recovered and any unsatisfied fine that may be levied under any section of this Article and to pay to any person not maintaining the nuisance his damages as a consequence of the nuisance. An action to enforce such lien may be commenced in any court of competent jurisdiction by the State's Attorney of the county of the nuisance or by the person suffering damages or both, except that a person seeking to recover damages must pursue his remedy within 6 months after the damages are sustained or his cause of action becomes thereafter exclusively enforceable by the State's Attorney of the county of the nuisance." Ill. Rev. Stat. 1965, chap. 38, pars. 37—1, 37—2.

Neither section 37—2 nor its companion sections expressly provide for the filing of notice of the lien, or otherwise provide for the protection of third-party purchasers or mortgagees without notice, and because of this omission defendant contends that section 37—2, properly construed, manifests a legislative intent to create a secret lien good as against *bona fide* purchasers without notice. And because the abstract of title did not affirmatively show that the title to the premises in question was not encumbered by such liens, or that there was no pending litigation from which a lien could arise, defendant insists that plaintiff did not furnish an abstract showing good and merchantable title as the contract required. For the plaintiff it is urged that the legislature could not have intended the absurd result contended for by defendant, and that its true intent, gathered by reading section 37—2 in *pari materia* with the Conveyances Act, (Ill. Rev. Stat. 1965, chap. 30,) and various recording acts, was that the lien under section 37—2 was not to be superior to the rights of a *bona fide* purchaser without notice unless and until notice of the fine or judgment from which the

lien arises is filed in the office of the recorder of deeds in the county where the lands are located, or, if a suit is pending which could result in a lien, unless and until a *lis pendens* notice is filed with the recorder of deeds. Consonant with this construction, plaintiff contends that the abstract tendered reflected a merchantable title.

It is well settled that a court will not force upon a vendee a title which is doubtful in character, (*Livingston* v. *Meyers,* 6 Ill.2d 325,) and if, as defendant contends, the statute in question does grant a lien which, although unrecorded and unknown, would be superior to the rights of a subsequent purchaser, she would be justified in refusing the present tender of title. The question presented for decision is whether this was the legislative intent.

In the construction of a statute the law requires that it be given a reasonable interpretation. Under this rule, statutes are to be construed according to their intent and meaning, taking into consideration the reason for the enactment, the existing circumstances, and the objects sought to be obtained by the legislature. (*Southmoor Bank and Trust Co.* v. *Willis,* 15 Ill.2d 388; *Spring Hill Cemetery of Danville* v. *Ryan,* 20 Ill.2d 608.) However, it has also been frequently held that where the language of a statute admits of two constructions, one of which would make the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result will be avoided. (*People ex rel. Barrett* v. *Thillens,* 400 Ill. 224; *People ex rel. Prindable* v. *New York Central Railroad Co.* 397 Ill. 50.) As was said in the early case of *Loverin* v. *McLaughlin,* 161 Ill. 417, 429: "Statutes should be so construed as to give them a reasonable meaning, and should not be so interpreted as to lead to absurd consequences. 'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience,

and to oppose all prejudice to public interests.' (Sutherland on Stat. Const. sec. 324; Endlich on Int. of Stat. sec. 295.)"

Here, it is evident that the forfeiture provisions in the Criminal Code were enacted for the purpose of encouraging property owners and occupants to eliminate illicit activities from their premises, and to provide an effective method for abating the nuisance and reimbursing injured parties if the person maintaining the nuisance fails in his responsibilities. At the same time, however, there is no indication that the legislature, by the enactment of the forfeiture provisions, intended or desired to impede the ease of land conveyance which has long been enjoyed in this State, or to abrogate the various recording statutes which have made freedom of conveyance possible. To the contrary, legislative history reflects a policy and desire on the part of our lawmakers to encourage such commerce and to this end they have by statute established public records which may be relied upon by a purchaser in determining the status of real-estate titles. See *Bullard* v. *Turner,* 357 Ill. 279.

For example, section 30 of the Conveyances Act, (Ill. Rev. Stat. 1965, chap. 30, par. 29,) makes deeds, mortgages and other written instruments effective against subsequent purchasers only after recordation. Similarly, under recent amendments, judgments become a lien on real estate only from the time that a transcript, certified copy, or memorandum thereof is filed with the recorder of deeds in the county where the land is situated (Ill. Rev. Stat. 1965, chap. 77, par. 1), and, to protect the claimant's security during litigation, the Chancery Act (Ill. Rev. Stat. 1965, chap. 22, par. 53,) provides for the giving of constructive notice to subsequent purchasers by filing with the recorder of deeds. Even the Mechanic's Lien Act, which in effect creates a "secret" lien insofar as third parties are concerned, requires timely filing of notice to render it effective against *bona fide* purchasers for value. (Ill. Rev. Stat. 1965, chap. 82, par. 7.)

The result of these enactments, and the constant legislative policy reflected in comparable statutes, has been that purchasers have reposed in the thought that they could rely on public records in security, and that they would be subject to unrecorded claims only if they had or were in some manner chargeable with actual notice thereof. (*Marsh* v. *Stover,* 363 Ill. 490; *Vombrack* v. *Wavra,* 331 Ill. 508.) And because any departure from the security placed on recordation could endanger the structure upon which our land economy rests, as well as the stability of land titles, it has been held that the legislative intent to depart from a policy of recordation will not be implied but must be clearly expressed. *Bell* v. *Cassem,* 158 Ill. 45; *Hyland* v. *Waite,* 349 Ill. App. 213.

We find no such clear expression by the legislature in this case. And on the other side of the coin we may consider that the construction contended for by defendant would produce absurd results highly prejudicial to the public interest. Particularly appropriate is the language of the court in *Bellinger* v. *Griffith,* 23 Ohio St. 619, heretofore quoted in *Bell* v. *Cassem,* 158 Ill. 45, 50-51, as follows: "To give the statute the construction contended for would go far towards rendering titles insecure. No one could safely purchase real estate on the faith of its appearing from the public records to be clear of liens and incumbrances. A purchaser would be compelled to take the risk of ascertaining who had been the previous occupiers of the premises, and whether any judgments or causes of action existed against them for the unlawful use of the property while in possession. Surely no such innovation upon the policy of the State in regard to requiring liens upon real property to appear of record could have been intended, without an explicit legislative declaration to that effect." Accordingly, we conclude it was the legislative intent that the lien granted by section 37—2 was intended to be effective against *bona fide* purchasers without actual notice only on recording in the recorder's office of the county where the land is situated. In so holding we neither

restrict the freedom of conveyance nor frustrate the results sought to be obtained by the enactment of the forfeiture statute. Judgments and fines may still be satisfied from the premises of the person permitting the public nuisance to be maintained, and to protect against a possible conveyance the claimant has only to give constructive notice of his lien by recordation.

In the present case there was no *lis pendens* notice of pending litigation, no record of unpaid fines or judgments arising under the forfeiture statute with respect to the contract property, and defendant conceded that she had no actual knowledge which would deny her the protection afforded to a *bona fide* purchase for value. Under these circumstances we conclude that the title tendered by plaintiff was merchantable, and the decree of the circuit court of Sangamon County, granting specific performance, is affirmed.

*Decree affirmed.*