(No. 46508.—

ETHEL WENDT, Appellee, v. HENRIETTA MYERS *et al.*—(Geraldine Richter, Appellant.)

*Opinion filed November 27, 1974.*

Norman P. Wexler, of Wexler, Wexler and Heller Ltd., of Chicago, for appellant.

John L. Martin and James L. Tuohy, of Tuohy and Martin, of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

We granted leave to appeal from the judgment of the appellate court (17 Ill. App. 3d 230), which reversed the judgment of the circuit court of Cook County allowing defendant's motion for summary judgment in an action for damages under the Liquor Control Act.

Plaintiff, Ethel Wendt, as administrator of the estate of her deceased husband, filed a complaint against Henrietta Myers as operator and licensee of a tavern known as Elm Inn and against Lakeview Trust and Savings Bank as trustee under Trust No. 2348, which held title to the premises. The complaint alleged that plaintiff's husband had become intoxicated in the tavern, which led to a fatal fall down a stairway for which defendants were liable for

damages under section 14 of article VI of the Liquor Control Act (Ill. Rev. Stat. 1965, ch. 43, par. 135). Summary judgment in favor of co-defendant Lakeview Trust and Savings Bank was entered upon its motion alleging that as a mere land-trust titleholder it never managed or operated the property, operation and possession being vested in the beneficiary, Geraldine Richter. Thereafter, plaintiff filed an amended complaint naming Geraldine Richter as an additional defendant. In her answer to the amended complaint, defendant Richter admitted an allegation of the complaint that the beneficiaries of the land trust were "owners" of the premises. The case came on for trial, but a mistrial resulted.

Following reassignment for trial, defendant Richter filed a motion for summary judgment alleging that she held only naked legal title to the premises under certain "Articles of Warranty Deed" wherein she was contract seller and defendant Henrietta Myers was contract purchaser. The motion further alleged that pursuant to said contract, a copy of which was attached to the motion, she had no equitable or beneficial ownership of the tavern property nor did she maintain or control the premises in any manner making her liable to plaintiff with respect to the sale of alcoholic beverages to the plaintiff's deceased husband. The appellate court reversed the allowance of the summary judgment motion, primarily on the basis that under section 14 of article VI of the Liquor Control Act defendant was an "owner" of the premises notwithstanding the fact that the property had been sold pursuant to a contract for deed.

The relevant portions of section 14 of article VI of the Liquor Control Act provided:

> "Every person, who shall be injured, in person or property, by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; *and*

*any person owning, renting, leasing or permitting the occupation of any building or premises and having knowledge that alcoholic liquors are to be sold therein \*\*\* shall be liable, severally or jointly, with the person or persons selling or giving liquors aforesaid \*\*\*.* " (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 43, par. 135.)

The question to be decided is whether defendant was a person "owning" or "permitting the occupation of" the tavern within the meaning of the foregoing provision. Plaintiff contends that under the contract for deed defendant Richter retained sufficient incidents of owner-ship to render her an owner. Defendant Richter asserts to the contrary that she did not have the requisite control of the premises which goes with ownership.

The contract for deed dated September 1, 1962, between Geraldine Richter as seller and Henrietta Myers and her husband as purchasers provided for sale of the premises for $33,000 payable in monthly installments of principal and interest of $305.22 with delivery of a warranty deed to be made upon payment of the purchase price in full with interest thereon. The contract contained a further provision that at any time the principal sum of $11,000 had been paid the purchasers could elect to receive a warranty deed and give back either a first mortgage for the principal sum remaining or obtain their own financing and pay the balance in full. Included in the contract were provisions that the purchaser would not permit any liens to attach to the property which would be superior to the rights of seller, that contracts for repair contain express waivers of mechanic's liens and be ap-proved by the seller in advance, that the purchasers could not assign the contract for deed or lease or sublease the premises without prior approval of the seller, that no title, legal or equitable, would vest in the purchasers until delivery of the deed or payment of the purchase price in full and that the agreement not be filed with the recorder of deeds.

Section 1 of article I of the Liquor Control Act provides: "This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." (Ill. Rev. Stat. 1965, ch. 43, par. 94.) It is apparent that one of the significant purposes of the Act is to provide an effective remedy to those who are injured by intoxicated persons. Section 14 of article VI quoted above reflects the legislative intent in this regard by providing for personal liability on the part of not only the tavern keeper who actually sells the liquor but also the person who owns, rents, leases or permits his property to be used for such purposes. We note, however, that in 1959 the legislature repealed section 15 of article VI of the Act (Ill. Rev. Stat. 1957, ch. 43, par. 136), which had contained provisions supplementing the remedies contained in section 14 of article VI and also had created an additional remedy by providing that the building or premises on which the business of sale of alcoholic beverages was conducted was liable for the payment of any judgment rendered against the tavern keeper when the owner leased or knowingly permitted the premises to be used for such purposes. (Ill. Rev. Stat. 1957, ch. 43, par. 136; see *Gibbons v. Cannaven* (1946), 393 Ill. 376, for analysis of the purposes and interrelationships of sections 14 and 15 of article VI.) The repeal of section 15 of article VI thus had the effect of narrowing the scope of the Liquor Control Act in the matter of remedies.

The question of who is a person "owning" or "permitting" a premises to be used for the sale of intoxicating liquors within the meaning of section 14 of article VI of the Liquor Control Act has not been previously decided by this court. However, this issue has been considered on several occasions by the appellate

court, the most recent decision being *Robinson v. Walker* (1965), 63 Ill. App. 2d 204, in which it was held that a land trustee of an Illinois land trust was not an "owner" of the property due to the lack of any right to manage or control the premises. (See also Annot., *Who Is, As "Owner" Of Premises On Which Intoxicating Liquor is Sold, Liable Under Civil Damage Or Dram Shop Acts*, 18 A.L.R.3d 1323 (1968).) This court did consider an analogous issue with respect to section 10 of the Dram Shop Act of 1874 (Rev. Stat. 1874, ch. 43, par. 10), the provisions of which are identical to those of section 15 of article VI of the Liquor Control Act referred to above, which was repealed in 1959. In *Bell v. Cassem* (1895), 158 Ill. 45, it was contended that under section 10 a judgment recovered under the Dram Shop Act was superior to the lien of a mortgage on the building where the tavern was situated even though the mortgage was executed and recorded prior to the rendition of the judgment. In rejecting this argument, this court stated: "There can be no doubt, from a consideration of this section, that it was the evident intention of the legislature to make only owners of property, and those having rentable interests, amenable to the provisions of the Act. A mortgagee, by virtue of his mortgage only, and before any condition broken, has no legal right to rent or lease the encumbered premises to any person or for any purpose. Having no such control over it, he cannot be said to permit the premises to be occupied for any purpose. If premises on which money has been loaned and a mortgage executed should at sometime thereafter be leased or rented by the mortgagor for dealing in intoxicating liquors, the law does not recognize the right of the mortgagee to compel the vacation of such premises without some clause in the mortgage giving such power. Until some condition of the mortgage is broken, the control of the mortgagor is absolute, except in the permitting or committing of waste, as if no mortgage lien existed." (158 Ill. 45, 49.) This court further considered

the validity of section 10 in *Garrity v. Eiger* (1916), 272 Ill. 127, 136, *aff'd*, 246 U.S. 97, 62 L. Ed. 596. There it was said: "Anyone entering into the business or leasing his property for [the sale of intoxicating liquors] must necessarily accept and agree to be bound by the provisions of the law designed to mitigate the evils of the traffic or to compensate for the damages done by it. Intoxicating liquor cannot be sold without a place in which the business is conducted, and the owner who furnishes premises necessary to the carrying on of the business is an actual participant in it. If he provides a building or premises for another to conduct a business the usual and ordinary result of which is damage to individuals, he cannot complain that his property is held to compensate the injured party. Having voluntarily devoted his property to a use causing damage and brought it within the conditions prescribed by the statute, he makes it a surety for the payment of any judgment recovered against the occupant of the premises."

It can thus be seen that the Act has previously been construed as requiring the existence of a meaningful degree of control over the premises, or other factors indicating involvement in the business of selling intoxicating liquors before liability under the Act can attach. In applying these criteria to this case, we are of the opinion that the requisite degree of control was not retained by defendant Richter as a contract seller of the premises in question. There is no indication that the sale of the premises was anything but a *bona fide* sale of real estate financed through the useful credit device of a contract for deed. (*Cf. Anderson v. Cosmopolitan National Bank of Chicago* (1973), 54 Ill.2d 504.) While Geraldine Richter may have been the owner of record of the real estate on which the tavern was located, it is clear that she was not involved in the use, daily control or supervision of the property, beneficially or otherwise. Henrietta Myers, as contract purchaser, was the equitable owner (*Rosewood Corp. v. Fisher* (1970), 46 Ill.2d 249; *Shay v. Penrose* (1962), 25

Ill.2d 447), and defendant's principal rights under the contract were to receive the payments therein provided for; the retention of title was simply a means of securing such payments. Of like intent were the provisions requiring consent to assignment of the contract for deed and to the leasing or subleasing of the premises by the purchaser, as well as the provision providing that no title would vest in the contract purchasers until delivery of the deed or payment of the purchase price in full. It is clear, as earlier noted, that she retained no management or control over the premises, nor did she control the use to which the premises might be put by the contract purchasers while they were in possession or the manner in which any businesses they might choose to engage in would be conducted. Under the rationale of the *Cassem* case (158 Ill. 45), she accordingly cannot be said to have "permitted" the premises to be occupied for any purpose. Unlike a lessor of premises, she cannot be deemed to have furnished the premises or voluntarily devoted her property to those purposes so that she could be considered as having become an actual participant in the business of operating a tavern. (See *Garrity v. Eiger,* 272 Ill. 127.) All factors considered, we do not believe that it would further the purposes of the Liquor Control Act to subject a contract seller to liability under section 14 of article VI when pursuant to a *bona fide* installment contract for sale he has for all practical purposes relinquished all dominion, control and enjoyment of the premises and has retained only very limited incidents of ownership for security purposes as in this case.

We turn next to plaintiff's contention that defendant should have been estopped from claiming nonownership of the premises in the motion for summary judgment. A brief chronology of the pleadings is necessary to properly consider this issue. Plaintiff's complaint was filed on January 28, 1968. On April 19, 1968, after the land trustee had been dismissed from the suit and defendant Geraldine Richter added as an additional party, defendant

Richter filed an answer which admitted ownership of the dramshop premises. On April 25, 1972, interrogatories were answered by defendant Henrietta Myers in which it was revealed that she was a contract purchaser of the dramshop premises and that defendant Richter was the contract seller. On May 18, 1972, plaintiff and defendant Myers entered into a compromise settlement pursuant to which a covenant not to sue was executed. On June 20, 1972, defendant Richter obtained leave to file a cross-complaint against defendant Myers for indemnification under the terms of the contract for deed. On August 15, 1972, defendant Richter filed her motion for summary judgment alleging that under the contract for deed she held only naked legal title to the dramshop premises. Plaintiff contends that having admitted ownership of the premises in her original answer, defendant Richter should be estopped from changing her position and pleading nonownership in her motion for summary judgment over 4½ years later. In this regard she argues that she was taken by surprise by defendant Richter's change of stance and that, had she been aware that nonownership would be pleaded, she never would have settled her claim against the tavern operator, Henrietta Myers.

Plaintiff's argument assumes that defendant Richter somehow made an irrevocable election when in her original answer she admitted ownership of the premises. Plaintiff points to no special facts or circumstances which support her position in this regard. It is conceded that the existence of the contract for deed was known to all parties prior to the time the plaintiff entered into the compromise settlement with the tavern keeper. Plaintiff was thus in a position where she knew or should have known of the possibility that a nonownership defense might be asserted at some later time by defendant Richter. We find nothing to indicate that the compromise settlement and the subsequent assertion of the nonownership defense was a part of any scheme on the part of defendants Richter and

Myers to defeat plaintiff's claim, nor is there any indication that defendant Richter's actions were calculated to mislead plaintiff. Under the circumstances here present, we conclude that the trial court did not err in permitting defendant Richter to assert the nonownership defense by way of her motion for summary judgment.

Accordingly, the judgment of the appellate court is reversed, and the judgment of the trial court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*