MAXINE MOHR *et al.*, Plaintiffs-Appellants, v. DOROTHY JILG *et al.*,
Defendants-Appellees.

Fourth District   No. 4—90—0775

Opinion filed January 31, 1992.

McCULLOUGH, J., dissenting.

Michael J. McDonald and Howard Lee White, both of Jerseyville, for appellants.

Thomas Bordenkircher, of Springfield, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiffs Maxine Mohr and her grandson, Robert D. Waters, brought this action under the Dramshop Act (Ill. Rev. Stat. 1987, ch. 43, par. 135) against Alberta Scott and Leroy Scott, the owners and operators of the Oasis Tavern and Restaurant (Oasis). Plaintiffs also brought counts based on negligence against the allegedly intoxicated driver, Dorothy Jilg. The jury returned verdicts against Jilg on the negligence counts, but found Oasis not liable under the Dramshop Act. Plaintiffs appeal the judgment in favor of Oasis. We reverse the judgment for Oasis, and remand for trial on the issue of damages only.

On February 9, 1988, at approximately 6:20 p.m., Maxine Mohr was driving southbound on Route 267 in Greene County. As she neared the Oasis, a car later identified as being driven by Dorothy Jilg pulled out of Oasis' parking lot and hit Mohr's car, knocking it into the ditch. Mohr and her grandson sustained severe injuries. Jilg left the scene of the accident. However, her front license plate was knocked off by the collision and police used it to trace Jilg as the driver of the car.

Jilg did not testify at trial due to illness, but her previous deposition testimony was read. In her deposition, Jilg testified she

arrived at the Oasis at 4 or 4:30 p.m., but later admitted she could have arrived as early as 3 p.m. She testified she did not drink any alcoholic beverages before arriving at the Oasis. Jilg stated she had two beers at the Oasis: the first immediately upon arrival, then the second a half hour later. Jilg testified she had her last beer 10 or 15 minutes before the accident. When asked whether she was under the influence of alcohol at 6:25 p.m., the time of the accident, she answered "Well, I just drank them two cans. I guess I was."

Jilg stated that she did not see Mohr's car collide with hers, and was unaware even that a collision occurred. Jilg's son, David, testified he was at his mother's house on the night of February 9, 1988, and that his mother arrived between 6:30 and 7 p.m. David Jilg testified his mother slurred her words and that he smelled alcohol on her breath, but he did not believe she was intoxicated. He testified his mother did not drink any alcohol during their dinner.

Leroy Scott managed the Oasis and tended bar on February 9, 1988, from 1 to 4:45 p.m. He testified Jilg arrived around 3:30 p.m. He served Jilg a 12-ounce can of Stag beer upon arrival, and then a second one around 45 minutes later. Scott testified that based on his observation of Jilg, he did not believe she was intoxicated. Scott was relieved by Harold Mullinck, who tended bar from 5 to 5:15 p.m. He testified he did not serve Jilg anything to drink, but stated Jilg had a glass of beer in front of her. Cletus Beirman, another Oasis bartender, relieved Mullinck at 5:15 p.m. Beirman served Jilg one Stag beer between 5:15 and 6:15 p.m. He stated he was not close enough to notice if alcohol was on her breath, and did not remember seeing her walk. When asked if he was able to form an opinion whether Jilg was intoxicated, Beirman stated, "Well she seemed fine to me when I came to work," and testified that she was "fine" the last time he remembered seeing her.

Matthew Scroggins, a Carrollton patrolman, was called to the scene of the accident. He ran a registration check of the license plate found at the scene which revealed it to be Jilg's, and sent a deputy to locate her. Scroggins later saw Jilg at the sheriff's department at 7:50 p.m. Scroggins testified that at this time she was swaying, appeared unsteady on her feet, slurred her speech, and he smelled alcohol on her breath. Scroggins observed Jilg perform a finger-to-nose field-sobriety test, in which she touched the tip of her nose once in six attempts. Based on his observations of Jilg, Scroggins believed she was intoxicated, and arrested her for driving under the influence. Scroggins performed a breathalyzer test at 8:25 p.m., which revealed her blood-alcohol level to be 0.12. Scroggins

asked Jilg how much she drank, and she said "three or four." This statement was admitted only as against Jilg, and not against Oasis.

George Rogers, an Illinois State trooper, testified he saw Jilg at the Greene County sheriff's department between 7:30 and 8 p.m. on February 9, 1988. According to Rogers, Jilg slurred her speech, her eyes were bloodshot, and he smelled alcohol on her breath. Rogers performed a horizontal gaze nystagmus test on Jilg. He believed Jilg was intoxicated and did not have the ability to operate a motor vehicle.

Rich Snyder was the Greene County deputy sheriff sent to the Jilg house on February 9, 1988. He found Jilg's car in a shed, with one license plate missing and the rear plate matching the one found at the scene of the accident. He smelled alcohol on Jilg's breath at 7:17 p.m. when he spoke with her. Jilg's guilty plea and traffic citation for driving under the influence of alcohol on February 9, 1988, were admitted into evidence only against Jilg.

Upon this evidence, the jury returned verdicts against Jilg. The jury answered "yes" to a special interrogatory which asked, "Was Dorothy Jilg intoxicated at the time of the accident?" The jury, however, found in favor of defendant Oasis on the claim based on dramshop liability. Plaintiffs filed a post-trial motion regarding the count against Oasis. Plaintiffs asked the court to enter judgment *n.o.v.* or, in the alternative, to grant plaintiffs a new trial on the count against Oasis because they argued the special interrogatory was inconsistent with the general verdict. The trial court denied plaintiffs' motion and their appeal followed.

■■ Plaintiffs contend the jury's special interrogatory was inconsistent with its general verdict in favor of defendant Oasis, finding it not liable under the Dramshop Act. The Dramshop Act provides a cause of action for those injured by intoxicated drivers against "any person, licensed under the laws of this State *** to sell alcoholic liquor, who, by selling or giving alcoholic liquor *** causes the intoxication of such person." (Ill. Rev. Stat. 1987, ch. 43, par. 135.) The legislative intent of the Dramshop Act is to place the responsibility for damages occasioned by the use of alcohol on those who profit from its sale. *Kingston v. Turner* (1987), 115 Ill. 2d 445, 457, 505 N.E.2d 320, 325.

■■ The jury's answer to the special interrogatory finding that Jilg was intoxicated at the time of the accident should not be disturbed upon appeal absent a finding that it is against the manifest weight of the evidence. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 249, 476 N.E.2d 427, 438.) The circum-

stances surrounding the accident, Jilg's testimony that she "guessed" she was intoxicated, her son's testimony that she slurred her words when she arrived home that night, and the various police officers' testimony that Jilg was intoxicated abundantly support the jury's special interrogatory that she was intoxicated at the time of the accident. The function of the special interrogatory is to "test the jury's general verdict against its conclusions as to the ultimate controlling facts." (*Duffin v. Seibring* (1987), 154 Ill. App. 3d 821, 835, 507 N.E.2d 930, 939.) When the answer to the special interrogatory is inconsistent with the jury's general verdict, the special interrogatory controls. Ill. Rev. Stat. 1987, ch. 110, par. 2—1108.

■ In order for Oasis to be liable under the Dramshop Act to a plaintiff, the jury had to find the following propositions: (1) Jilg was intoxicated at the time of the accident, (2) Oasis provided intoxicating liquor consumed by Jilg, (3) the liquor provided by Oasis caused the intoxication of Jilg, (4) Jilg's intoxication was at least one cause of the accident, and (5) as a result of the occurrence, each plaintiff suffered injury and/or damage to his or her property. By its answer to the special interrogatory, the jury found Jilg was intoxicated at the time of the accident. Oasis admitted serving intoxicating liquor to Jilg.

The remaining factors which plaintiffs were required to prove in order to recover on the dramshop counts were not controlled by the answer to the interrogatory or the verdict against Jilg. The question whether the plaintiffs each suffered injury or damage as a result of the occurrence was not necessarily determined by the verdict against Jilg as that verdict is entitled to no more weight than the verdict on the dramshop counts which could, in the abstract, have resulted from a jury determination that no injury or damage had occurred to any plaintiff as a result of the collision. However, the evidence was overwhelming that at least some injury or damage did so occur to each plaintiff. Any finding to the contrary could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Similarly, under *Pedrick*, the overwhelming proof required the jury to find that Jilg's intoxication (1) was caused by Oasis, and (2) was one proximate cause of the collision.

■ To cause the intoxication of an individual, the dramshop must furnish more than a negligible amount of alcohol to the person. (*Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812, 360 N.E.2d 108, 111.) The alcohol furnished at two separate taverns may cause a single intoxication, subject to the limitation that a tav-

ern may not be held liable for a *de minimis* contribution to an individual's intoxication. *Kingston*, 115 Ill. 2d at 456-57, 505 N.E.2d at 325.

Logically, for Oasis *not* to have caused Jilg's intoxication, she must have become intoxicated prior to arriving at the Oasis—and remained intoxicated for a period of approximately three hours as a result of her prior drinking—and the two to three beers she consumed at the Oasis must have contributed only a negligible amount to her intoxication. For Oasis not to be liable, it is necessary that Jilg became intoxicated prior to arriving at the Oasis since she had no opportunity to consume additional alcohol after leaving the Oasis, as the accident occurred immediately after Jilg exited Oasis' parking lot. However, no evidence was presented at trial to support the conclusion that Jilg was intoxicated when she arrived at the Oasis, and that she was so intoxicated that the two to three beers contributed only a *de minimis* amount to her intoxication. There was no direct evidence that she drank alcohol anywhere except at the Oasis prior to the accident.

The trial court relied on *Kingston* in determining that there was no inconsistency between the jury's special interrogatory and its general verdict. In *Kingston*, the supreme court held it possible for the jury to find that an individual was intoxicated at the time of the accident, but that his intoxication was not caused by either of the two bars where he drank, when no clear evidence was presented proving that he drank more than negligible amounts of beer at either bar. However, *Kingston* is distinguishable because in that case there was direct evidence that the intoxicated motorcyclist consumed alcohol at two different bars, but no clear evidence he had more than negligible amounts of alcohol at either, and the jury was forced to decide whether one or both caused the intoxication. Here, by contrast, Oasis admitted serving Jilg more than a negligible amount of alcohol, and there was no evidence presented that Jilg consumed any alcohol prior to arriving at the Oasis.

▮ In its denial of plaintiffs' post-trial motion, the court in the instant case stated:

> "[The jury] did not have to believe Jilg's statement that she did not consume any alcohol before entering the Oasis. *** *They could have not believed Jilg when she said she did not drink any alcohol before entering the Oasis.*" (Emphasis added.)

While the credibility of witnesses and weight given to their testimony are typically for the jury's consideration, a jury may not arbi-

trarily reject a witness' testimony. The Illinois Supreme Court has stated, "Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury." (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127.) *Brown* involved a paternity case in which defendant admitted to having sexual intercourse with the plaintiff over a period of months, and despite a complete absence of evidence that plaintiff had intercourse with anyone else, the jury returned a verdict for defendant. The jury apparently rejected the testimony of plaintiff that she had not had intercourse with anyone except defendant. The court held that while the jury is usually free to disbelieve a particular witness, " 'it may not make an affirmative finding that the exact opposite of [a witness'] testimony is true if there is no evidence to support such a finding.' " *Brown*, 88 Ill. 2d at 86, 430 N.E.2d at 1128, quoting 30 Am. Jur. 2d *Evidence* §1080, at 227 (1976).

■ In the instant case, the jury must have believed the exact opposite of Jilg's testimony that she did not drink anywhere but the Oasis the day of the accident, despite the absence of any evidence indicating that she did. Jilg's testimony that she did not drink prior to arriving at the Oasis was uncontradicted. It was, in fact, supported by Cletus Beirman's testimony that Jilg did not appear intoxicated at 5:15 p.m. Similarly, it was not inherently improbable that Jilg did not consume any alcoholic beverages prior to arriving at the Oasis at 3:30 p.m., drank two to three beers, and was intoxicated at the time of the accident, 6:25 p.m. Jilg's blood-alcohol level of 0.12 does not contradict her testimony that she did not consume any alcohol prior to arriving at the Oasis.

The strength and uncontradicted nature of the evidence also required a determination that Jilg's intoxication was a proximate cause of the collision. It occurred almost immediately after she left the Oasis, where she had been drinking. Jilg drove out of the Oasis parking lot and collided with the automobile in which the plaintiffs were riding. No evidence indicated any other explanation of the collision other than that plaintiff was inattentive. Given the fact that Jilg was intoxicated at this time, any explanation of the occurrence which does not include Jilg's impairment from intoxication as a proximate cause of the collision defies reason. The causal relationship between the intoxication and the collision was proved as a matter of law.

Accordingly, under *Pedrick*, we find that the evidence when

viewed most favorably to Oasis so overwhelmingly favors plaintiffs as to the Dramshop Act count that no contrary verdict could ever stand. We reverse the judgment on the verdict in favor of Oasis and grant judgment *n.o.v.* in favor of plaintiffs and against Oasis as to liability on the Dramshop Act count and remand for retrial as to that count on the question of damages only.

Reversed and remanded.

LUND, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I do not agree that Jilg's intoxication was necessarily a proximate cause of the accident. The findings by the jury that Jilg was intoxicated and the Oasis not liable in damages are not necessarily inconsistent.

Intoxication alone is not proximate cause. I strenuously disagree with the majority statement:

> "No evidence indicated any other explanation of the collision other than that plaintiff was inattentive. Given the fact that Jilg was intoxicated at this time, any explanation of the occurrence which does not include Jilg's impairment from intoxication as a proximate cause of the collision defies reason. The causal relationship between the intoxication and the collision was proved as a matter of law." 223 Ill. App. 3d at 223.

The violation of a State law relating to drinking, in itself, is not proof that the violation was the cause of the accident. Finding Jilg liable for damages on the negligence issue is not determinative of the Oasis' liability.

The jury was instructed as to negligence:

> "The plaintiffs claim that they were injured and sustained damage, and that the defendant was negligent in one or more of the following respects:
>
> > a. Failing to yield the right-of-way upon entering Illinois Route 267; and
> >
> > b. Driving while under the influence of intoxicating liquor."

The jury was further informed that the plaintiff had to prove:

> "First, *** Dorothy Jilg, acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and *** was negligent."

The jury returned a general verdict of negligence and was not asked to specify whether the plaintiff proved either or both of the alternative grounds for that finding. The special interrogatory only asked the jury whether defendant was under the influence.

The jury could have concluded that while Jilg was intoxicated (and that the tavern sold her the liquor and caused the intoxication), the proximate cause of the accident was Jilg's failure to yield the right-of-way irrespective of the intoxication.

Because the jury did not explicitly find that Jilg's intoxication was at least one cause of the accident or was a necessary or mandatory inference required by the evidence, the jury could have determined the injury was not caused "by the intoxication" of Jilg based upon the instructions given as applied to the evidence presented.