DURLYNNE JACKSON, Indiv. and as Special Adm'r of the Estate of Donald C. Jackson, Deceased, *et al.*, Plaintiffs-Appellants, v. JOSE MORENO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—94—4006

Opinion filed March 11, 1996.

504

Timothy Quinn, of Edward R. Vrdolyak, Ltd., of Chicago, for appellants.

Maureen A. McGuire and Margaret T. Conway, both of MacCabe & McGuire, of Chicago, for appellees Southland Corp.

JUSTICE WOLFSON delivered the opinion of the court:

This case requires us to explore the reach of the Dramshop Act (235 ILCS 5/1—1 *et seq.* (West 1992)).

BACKGROUND

On May 25, 1993, Jose Moreno purchased beer at a 7-Eleven Store located on West Irving Park Road in Chicago. The 7-Eleven Store was operated by Amjad Chaudhri in accord with a franchise agreement with Southland Corporation (Southland). Under the franchise agreement, Southland provided Chaudhri with a license and lease for the premises, training, and ongoing services.

The 7-Eleven Store was located within a small shopping complex, which was owned by Parkview Plaza Associates, Inc. (Parkview). Parkview leased the premises to Southland. In the lease, Southland

was assured that its leased premises would be the only location within the shopping center permitted to sell "packaged fluid milk, packaged bread products, or delicatessen type food products for consumption off the premises, or packaged alcoholic beverages, or tobacco products."

Plaintiffs Durlynne Jackson, individually and as special administrator of the estate of Donald C. Jackson, deceased, and Donna Jackson brought suit against Chaudhri (who is not a party to this appeal), Southland, and Parkview, under the Illinois Liquor Control Act (Act), commonly referred to as the Dramshop Act. Plaintiffs alleged that Southland and Parkview "owned" or "permitted the occupation of the premises" where liquor was sold to defendant Moreno, who became intoxicated and caused a motor vehicle accident resulting in the death of plaintiffs' deceased, as well as other injury and damages. See 235 ILCS 5/6—21 (West 1992).

Southland and Parkview both moved for dismissal under section 2—619 of the Civil Practice Law (735 ILCS 5/1—101 *et seq.* (West 1992)), claiming that they were not "owners" or "permitters" within the meaning of the Act. The trial court granted the motions and made its rulings final and appealable by adding Rule 304(a) (134 Ill. 2d R. 304(a)) language. We reverse the trial court's orders for reasons that follow.

OPINION

■ The trial court granted defendants' motions for dismissal under section 2—619. As stated in *Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739, 742, 638 N.E.2d 1176 (1994):

"Section 2—619 provides a means to dispose of issues of law or of easily proved issues of fact. [Citations.] A section 2—619 motion admits all well-pleaded facts in the complaint but does not admit conclusions of law or conclusions of fact unsupported by specific allegations. [Citation.] The trial court should grant the motion only if, after construing the documents supporting the motion in the light most favorable to the nonmovant, it finds no disputed issues of fact. [Citation.] The trial court may not weigh the evidence or decide controverted material issues of fact."

We must determine whether the trial court erred when it held, as a matter of law, that Southland and Parkview were not "owners" or "permitters" within the language of the Illinois Liquor Control Act. Because the trial court issued rulings of law, we use a *de novo* standard in this review. *S.B. Lexington, Inc. v. Near North Insurance Agency, Inc.*, 244 Ill. App. 3d 1023, 1030, 614 N.E.2d 234 (1993).

## WHETHER THE TRIAL COURT ERRED IN DISMISSING PARK-VIEW

■ Section 6—21 of the Illinois Liquor Control Act (235 ILCS 5/6—21 (West 1992)) provides, in pertinent part:

"Every person who is injured within this State, in person or property, by any intoxicated person has a right of action in his or her own name, severally or jointly, against any person, licensed under the laws of this State *** to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person. *** *Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein,* or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors." (Emphasis added.)

■ A dramshop action is not predicated on negligence. *Osinger v. Christian*, 43 Ill. App. 2d 480, 193 N.E.2d 872 (1963). It is a cause of action, created by statute, which imposes liability for damages caused by the use of alcohol on those who profit from its sale. *Mohr v. Jilg*, 223 Ill. App. 3d 217, 586 N.E.2d 807 (1992).

The clear language of the statute imposes liability, jointly or severally with the person selling the alcohol, on anyone who owns, rents, leases, or permits the occupation of a building or premises knowing that alcohol will be sold there.

*Wendt v. Myers*, 59 Ill. 2d 246, 252, 319 N.E.2d 777 (1974), explained the policy behind this statutorily imposed liability. Quoting *Garrity v. Eiger*, 272 Ill. 127, 136, 111 N.E. 735 (1916), the *Wendt* court said:

" 'Anyone entering into the business or leasing his property for [the sale of intoxicating liquors] must necessarily accept and agree to be bound by the provisions of the law designed to mitigate the evils of the traffic or to compensate for the damages done by it. Intoxicating liquor cannot be sold without a place in which the business is conducted, and the owner who furnishes premises necessary to the carrying on of the business is an actual participant in it.' " 59 Ill. 2d at 252.

The *Wendt* court further held that the Act must be construed as requiring "a meaningful degree of control over the premises, or other factors indicating involvement in the business of selling intoxicating liquors before liability under the Act can attach." 59 Ill. 2d at 252.

The court did not specify what it meant by "a meaningful degree of control over the premises." 59 Ill. 2d at 252. But the record owner

of the premises had sold the property under a contract for deed. Deciding that liability should not be imposed on the record owner, the court found it significant that the contract seller "retained no management or control over the premises, nor did she *control the use to which the premises might be put* by the contract purchasers while they were in possession or *the manner in which any businesses they might choose to engage in would be conducted.*" (Emphasis added.) 59 Ill. 2d at 253.

In *Linson v. Crow*, 33 Ill. App. 3d 377, 342 N.E.2d 350 (1975), the contract vendors of a tavern, who parted with all control over the tavern's operation, were not "owners" or "permitters" within the meaning of the Act. And in *Cantrell v. DuQuoin State Bank*, 271 Ill. App. 3d 291, 647 N.E.2d 1114 (1995), the bank held a defaulted mortgage, but did not exercise its rights under the mortgage and note. The court held the bank did not maintain a meaningful degree of control over the premises.

In the case before us, Parkview is the legal owner of the premises. In addition, Parkview exercised control over the use to which the land may be put. The lease contract between Parkview and Southland specifically provided that the premises leased to Southland would hold the exclusive right to sell alcoholic beverages within the shopping complex. Paragraphs 23 and 24 of the lease provide:

> "23. CO-TENANCY. LESSOR agrees that no building in the shopping center shall be occupied by a business selling food or *alcoholic beverages* for consumption on the premises, without the prior written consent of LESSEE, except for Subway Sandwich Shop.
>
> 24. EXCLUSIVE. LESSOR agrees that no occupant of any building in the shopping center other than the herein leased building shall be allowed to sell packaged fluid milk, packaged bread products, or delicatessen type food products for consumption off the premises, or *packaged alcoholic beverages*, or tobacco products." (Emphasis added.)

Paragraph 25 of the lease promised there were no restrictions that would prevent Southland from selling beer for off-premises consumption. Paragraph 6 underlined the commercial importance of alcohol sales in the transaction. Southland was allowed to terminate the lease if it were unable to secure a liquor license.

These provisions make it clear that Parkview leased the property to Southland knowing and expecting that alcoholic beverages would be sold there. The provision was bargained for and was of commercial advantage to both parties.

The trial court dismissed Parkview, relying in part on *Fabian v.*

*Polish American Veterans Ass'n*, 126 Ill. App. 3d 80, 466 N.E.2d 1239 (1984), finding that Parkview had no control over the sale of alcohol.

In *Fabian*, the association owned a building where it operated a licensed tavern. The building also had a large hall on the third floor, which was rented out for a wedding reception. The association provided no food, drinks, or services for this reception. The lessee provided all of the food and alcoholic beverages. A guest at the wedding became intoxicated after drinking beer and wine provided at this wedding.

The trial court in *Fabian* granted the association summary judgment in its favor, finding that no liability attached under the Dramshop Act because the liquor given to the intoxicated guest was provided in the course of a private social function. The appellate court affirmed. The association did not fall within the plain language of the statute because it did not lease or permit the occupation of the premises "knowing that alcoholic liquors are to be sold therein." In fact, there was no commercial sale of alcohol in *Fabian*. See *Heldt v. Brei*, 118 Ill. App. 3d 798, 455 N.E.2d 842 (1983) (uncompensated social host is not subject to liability under the Dramshop Act); *Richardson v. Ansco, Inc.*, 75 Ill. App. 3d 731, 394 N.E.2d 801 (1979) (noncommercial suppliers of liquor are not liable under the Dramshop Act).

▮ In the present case, Parkview is the owner of the property. It leased the property to Southland knowing that alcoholic beverages would be sold there. Not only does Parkview fall within the plain language of the statute, the record supports the conclusion that Parkview is within the boundaries established by *Wendt*. *Wendt* did not require control over the daily operation of the liquor business. Parkview maintained meaningful control over the premises because it exercised control over the use to which the property may be put. Nothing in the statute or the cases requires that the lessor have control over each actual sale of alcohol. *Fabian* does not apply.

We find that the trial court erred in dismissing Parkview.

## WHETHER THE TRIAL COURT ERRED IN DISMISSING SOUTHLAND

▮ The statute imposes joint or several liability upon "[a]ny person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be sold therein." 235 ILCS 5/6—21 (West 1992).

Southland is lessee under the contract with Parkview. That contract provided Southland with the exclusive right to sell alcoholic beverages on the leased premises. In turn, Southland entered into a

franchise agreement with Chaudhri, whereby Southland agreed to provide Chaudhri with the lease to operate a 7-Eleven on the property it leased from Parkview.

The franchise agreement gave Southland a significant amount of control over the manner in which Chaudhri could conduct his business. Paragraph 3, under the heading "Training and Qualification," states: "7-Eleven at any time may discontinue training, may decline to certify, or may revoke the certification of any participant who fails to evidence an understanding of the training satisfactory to 7-Eleven, or otherwise by acts or omissions, at any time prior to the Effective Date, is, in any way unsatisfactory to 7-Eleven." Later, in paragraph 28, the Franchise agreement provided for its termination if, among other things, "FRANCHISEE fails to maintain an Inventory of a type, quantity, quality and variety consistent with the 7-Eleven Image."

In addition, Southland contemplated the sale of alcoholic beverages on the premises. The franchise agreement specifically noted the hours during which alcoholic beverages could be sold in accord with State and local ordinances. The agreement also provides for indemnification of up to $500,000 "for losses *** as a result of bodily injury or property damage (including libel, slander, false arrest, defamation of character, product liability, *liquor liability*, and fire legal liability) arising out of FRANCHISEE's operation of the Store." (Emphasis added.)

The facts before the trial court provided a basis for finding that Southland leased the premises and permitted the occupation of the premises knowing that alcoholic beverages would be sold. In addition, the franchise agreement gives support to the notion that Southland "maintained a meaningful degree of control over the premises," fulfilling the *Wendt* requirement. We find that the trial court erred in dismissing Southland.

CONCLUSION

The orders entered by the trial court dismissing Southland and Parkview are reversed and the case remanded for further proceedings.

Reversed and remanded.

CAMPBELL, P.J., and BRADEN, J., concur.