Meriam Hyland, Appellant, v. William Waite, Chicago City Bank and Trust Company, as Trustee Under Trust Number 3358, Appellees.

Gen. No. 45,918.

Opinion
filed February 2, 1953. Released for publication February 20, 1953.

PETTINGER, QUIGLEY & FISHER, of Chicago, for appellant; PAUL J. MAGUIRE, of Chicago, of counsel.

FERLIC & GANNON, of Chicago, for appellees; FRANK J. FERLIC, JOSEPH D. GANNON, and JOSEPH J. SULLIVAN, JR., all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Meriam Hyland filed a complaint in chancery in the superior court of Cook county alleging that on April 13, 1945, William Waite was the owner of certain real estate at 6410 South Ashland Avenue, Chicago; that he "either leased or otherwise knowingly allowed" the premises to be used as a tavern; that on or about June 5, 1946, a complaint was filed by plaintiff in the superior court of Cook county under the Dram Shop Act against William Dewyer, the owner of the tavern located in a building on the premises, for injuries occurring on or about April 13, 1945; that on or about

October 31, 1950, a judgment for $15,000 was entered in that case in favor of plaintiff and against William Dewyer; that no part of the judgment has been paid; that on or about April 27, 1945, William Waite conveyed the real estate to the Chicago City Bank and Trust Company, as Trustee under Trust No. 3358; and that the conveyance was made for the purpose of concealing the ownership of the real estate, or of defeating the right of plaintiff to levy thereon. Plaintiff asked that a summons issue against William Waite and the Chicago City Bank and Trust Company, that the lien upon the real estate ''acquired by reason of aforesaid judgment be foreclosed'' and that the sheriff be ordered to sell the premises and pay the proceeds thereof to the amount of the judgment, plus costs and interest to plaintiff. A motion by the Chicago City Bank and Trust Company, as Trustee, to strike the complaint and dismiss the cause was sustained and plaintiff appealed.

██ It will be observed that the complaint fails to allege that the bank knowingly permitted the premises to be used or occupied for the sale of liquors. It also fails to allege that the grantor, William Waite, owned or had an interest in or leased the property either at the time of the filing of the complaint or at the time of the entry of the judgment against William Dewyer, the dramshop keeper. The complaint does not allege that the bank had notice of plaintiff's cause of action at the time it purchased the premises. Section 14 of the Dram Shop Act (par. 135, ch. 43, Ill. Rev. Stat. 1951) [Jones Ill. Stats. Ann. 68.042] gives to one injured in consequence of the sale of intoxicating liquors three distinct remedies. He may sue the tavern keeper alone and obtain a personal judgment against him; he may sue the tavern keeper and the owner of the building jointly and obtain a personal judgment against them; or he may sue the owner of the building

215

separately and obtain a personal judgment against him. In either case the judgment would be a lien upon all the property of the judgment debtor or debtors. Section 15 (par. 136, ch. 43, Ill. Rev. Stat. 1951) [Jones Ill. Stats. Ann. 68.043] gives to the person injured the additional right to enforce the judgment against the tavern keeper against the property used for the sale of intoxicating liquors, provided the owner leased it or knowingly allowed it to be used for that purpose. *Gibbons v. Cannaven,* 393 Ill. 376. Plaintiff asserts that when a cause of action arises under section 135, a potential lien is created against the property; that when a judgment is obtained against a tavern keeper the lien then becomes enforceable against the property itself, irrespective of whether or not changes in ownership may have taken place between the time of the accrual of a cause of action against the tavern keeper and the entry of the judgment. Plaintiff admits that the construction for which she contends would cast a cloud upon the title to every piece of real estate in which a tavern had been located, but insists that the relief is in harmony with other provisions of the Act which are designed to the end that the health, safety and welfare of the people shall be protected and temperance in the consumption of alcoholic liquors fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution thereof. (Par. 94, ch. 43, Ill. Rev. Stat. 1951) [Jones Ill. Stats. Ann. 68.001].

We cannot agree with the construction sought by plaintiff. The statute directs a penalty against the dramshop keeper and to insure that only proper persons operate dramshops, it places a burden upon the owner of property leasing such premises to observe care to select those who will obey the law. The penalty intended was to operate against the owners who failed to select persons who would not violate the law by

illegal sales of liquor. A subsequent purchaser for value would not be the one against whom the law directed a penalty because he neither leased the property nor permitted any one to violate the law by an illegal sale. *Garrity v. Eiger,* 272 Ill. 127, and *Gibbons v. Cannaven,* 393 Ill. 376, cited by plaintiff, involved suits where there had been no change of ownership between the date of the injury and the filing of the equity suit. Defendant cites *Castle v. Fogerty,* 19 Ill. App. 442; *Bell v. Cassem,* 158 Ill. 45; and *Bellinger v. Griffith,* 23 Ohio State 619, in support of its position that if the premises wherein intoxicating liquors were dispensed are conveyed to an innocent purchaser for value prior to the filing of the suit, a subsequent lien does not attach. The *Castle* case deals with a reversionary interest acquired before the entry of judgment. The *Bell* case held that the mortgagee's lien has priority over a judgment subsequently obtained under section 135. The reasoning in the *Bellinger* case supports the position of defendant. In that case a judgment was recovered under a statute similar to our own against a tenant who occupied the premises and used them for the purpose of selling intoxicating liquors. After recovery of the judgment a suit was instituted to subject the real estate to the payment of the judgment. After the recovery of the judgment against the tenant, but before the equity proceeding was instituted, the premises had been sold in apparent good faith to a third party, and it was held that the title passed free from any lien of the judgment. It was there contended by the plaintiff that the judgment against the tenant who unlawfully sold the liquor became a lien on the property from the time the cause of action accrued. The court said (620):

"It is true the statute declares that the property shall be held liable for the damages assessed against

217

the occupier. But this liability is not spoken of in the sense of creating a lien. * * * To give the statute the construction contended for, would go far toward rendering titles insecure. No one could safely purchase real estate on the faith of its appearing from the public records to be clear of liens and incumbrances. A purchaser would be compelled to take the risk of ascertaining, who had been the previous occupiers of the property, and whether any judgments or causes of action existed against them for the unlawful use of the property while in possession. Surely no such innovation upon the policy of the state, in regard to requiring liens upon real property to appear of record, could have been intended without an explicit legislative declaration to that affect.''

The Ohio case was cited with approval by our Supreme Court in *Bell v. Cassem*, 158 Ill. 45, and states the Illinois law.

[4–6] One of the allegations of the complaint in the case at bar is that the conveyance was made for the purpose of concealing the ownership of the property or to defeat the right of plaintiff to levy thereon. There is no averment that it was the purpose of the purchaser to conceal the ownership or defeat any right of plaintiff. Plaintiff maintains that her allegations are sufficient, citing provisions of the Civil Practice Act that pleadings shall be liberally considered with a view to doing substantial justice to the parties, and that no pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet. Section 31 (1) of the Civil Practice Act (par. 155, ch. 110, Ill. Rev. Stat. 1951) [Jones Ill. Stats. Ann. 104.031], however, provides that nothing therein shall be deemed to affect in any way the substantial averments of fact necessary

218

to state any cause of action either at law or in equity. The Supreme Court said that there is nothing in any provision of the Civil Practice Act which excuses the necessity of stating a cause of action. See *Wuellner v. Illinois Bell Telephone Co.*, 390 Ill. 126, 129. Motions to dismiss admit facts well pleaded, but not conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. *Skidmore v. Johnson*, 334 Ill. App. 347, 357. The above mentioned allegations of the complaint are vulnerable to defendant's motion.

The court was right in sustaining defendant's motion to dismiss. Therefore, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

FRIEND, P. J. and NIEMEYER, J., concur.