FRANK PENDOWSKI, Plaintiff-Appellee, *v.* PATENT SCAFFOLDING
COMPANY, Defendant-Appellant.

First District (2nd Division)  No. 79-1052

Opinion filed September 23, 1980.

Haskell & Perrin, and Johnson, Cusack & Bell, Ltd., both of Chicago (Raymond R. Cusack, Donald M. Haskell, and Douglas Crone, of counsel), for appellant.

Philip E. Howard, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Frank Pendowski (Pendowski), filed this personal injury suit against defendant, Patent Scaffolding Company (Company). One count of the complaint sought compensatory damages based upon Company's alleged ordinary negligence, and one count sought punitive damages based upon Company's alleged wilful and wanton conduct. Company admitted its liability on the negligence count. Thus the trial issues were a determination of (1) the amount of compensatory damages, if any, due to Pendowski on the negligence count, and (2) whether Company had wilfully and wantonly breached a duty owed to Pendowski so as to allow an award of punitive damages. The jury returned a verdict finding Company to have both negligently and wilfully and wantonly breached a duty owed to Pendowski, awarding $500,000 negligence damages and $200,000 punitive damages. Company appeals the finding of wilful and wanton conduct and the punitive damages award.

The issues raised on this appeal are: (1) whether the evidence presented at trial adequately demonstrated that Company was guilty of wilful and wanton conduct which would support an award of punitive damages, (2) whether the trial court erred in its choice of jury instructions,

(3) whether the trial court erred in denying Company's several motions for mistrial which were based upon the allegedly improper and prejudicial manner in which Pendowski conducted his case, and (4) whether Pendowski's amended complaint validly stated a cause of action for punitive damages based upon wilful and wanton conduct.

Company engages in the business of manufacturing, furnishing, erecting, and dismantling scaffolding and protective canopies. In 1973, Company entered into a contract to build a scaffold and protective canopy on the southwest corner of the building located at 80 East Van Buren Street, Chicago. The scaffold was to be constructed at the top floor of the 20-story building. The canopy was to be built on the sidewalk directly below.

On September 11, 1973, as Company's employees were engaged in constructing the scaffold, a jack handle used on the job was dislodged from the partially built structure by one of the employees. The jack handle fell the 20 stories to street level, where it struck Pendowski, a pedestrian, as he walked past the area. The site of the impact was not covered by a protective canopy. Pendowski suffered severe injuries to his right foot which necessitated several surgical procedures including a partial amputation. This action followed.

The testimony and evidence relevant to this appeal concerns Pendowski's allegation that Company conducted itself in a manner which could legally be characterized as wilful and wanton, thereby allowing entry of a punitive damages award.

Victor Arbor (Arbor), manager of Company's Chicago branch, testified that he had contracted for Company for the construction of the scaffold and canopy in question. Arbor made an on-site inspection of the premises, determined what type of scaffolding would be necessary, and designed a protective canopy for the street level area below the scaffold. The purpose of the canopy, he stated, was to protect pedestrians passing the site. Prior to the on-site inspection, Arbor desired to extend the canopy across the alley (18 feet wide) located next to the building upon which the scaffold was to be built. The other party to the contract did not desire to undertake the extra cost that this would involve, and on-site inspection demonstrated, in Arbor's opinion, that such a structure was not feasible in any event because of traffic in the alley. Therefore, a canopy extending only four feet into the alley was built. Arbor testified that under normal circumstances, with a scaffold 20 stories high, the canopy would have been at least 10 feet wide.

Arbor also testified that Company had designed the scaffold jack handle and machine in which it was used. He stated that no safety line was used on any of the tools during work and that he knew of no law

requiring such safety lines. He stated that use of a safety net below the scaffold during its construction was not feasible, although he did not specifically state why. Arbor related that once the scaffold was completed, a mesh cloth was placed around it which would prevent any tools from thereafter falling off the structure. He also related that the likelihood of an item falling off the scaffold existed only while it was not yet completed. He had no knowledge of any locking devices to keep the jack handle locked into the machine during use. He noted that Company used no warning signs nor other information devices at street level during construction. He stated that Company had not experienced an accident such as happened here in its 62 years of business.

Also called to testify were the two employees of Company who were working on the scaffold when the accident occurred. One witness stated that a rope could be attached to the jack handle since that was how it was lowered to the scaffold from the roof above. The employee who knocked the jack handle off the scaffold testified that it happened as he was adjusting a ladder running from the scaffold to the roof and that the occurrence was wholly accidental.

### I.

The controlling issue is Company's contention that the evidence presented to the jury was insufficient to prove its liability for wilful and wanton conduct.

■■ It has long been established that punitive damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.) While the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify imposition of such a penalty is properly one of law. (*Kelsay.*) We therefore undertake review of Pendowski's case to determine the validity of the trial court's submission of the question to the jury in the first instance.

■■ A tort is characterized as having resulted from wilful and wanton conduct when such conduct is intentional, or when the act is committed under circumstances exhibiting a reckless disregard for the safety of others. Failure, after knowing that there is impending danger, to exercise ordinary care to prevent it, or failure to discover danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care, constitutes wilful and wanton conduct. (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69

N.E.2d 293.) It was incumbent upon Pendowski to demonstrate that Company's actions fell within this definition in order for him to have succeeded in his punitive damages action.

Pendowski argues that Company failed to exercise ordinary care in the face of the known danger that objects could fall from the scaffold to the street below. For examples of the "ordinary care" which Company allegedly could and should have used, Pendowski states that netting hung directly below the scaffold during construction to catch falling objects was feasible. Pendowski also suggests that warning signs should have been erected at street level, that guide ropes to direct people away from the building should have been used, and that flagmen should have been employed.

Our examination of the record does not elicit any evidence presented by Pendowski to demonstrate that such measures were in fact in use by anyone else in the particular industry involved, or that such measures were in fact feasible as alleged, or that a reasonable man would in fact undertake such measures in the exercise of ordinary care. Rather, Pendowski's assertions here rest firmly and solely upon the conjecture of his attorney. At oral argument before this court, counsel acknowledged that no witnesses testified, expert or otherwise, nor was any other substantive evidence presented to substantiate these claims. While we do not comment on the possible validity of the assertions given proper proof, we believe that this lack of evidentiary support for Pendowski's contention on this matter constitutes lack of adequate proof of Company's wilful and wanton misconduct. Therefore, this issue should not have been presented to the jury. The trial court erred when it did so. Accordingly, we find it necessary to reverse the judgment entered below holding Company liable for wilful and wanton action.

## II.

Company contends that the trial court erred in its choice of instructions which it tendered to the jury.

Had Pendowski in fact presented sufficient evidence in court to warrant submission of the punitive damages claim to the jury, it is the opinion of this court that the judgment below on this claim would have to be reversed due to error of the trial court in its choice of jury instructions.

When a corporate master is to be held vicariously liable for the actions of its employees, punitive damages for wilful and wanton conduct will be available only if a superior officer of the corporation ordered, participated in, or ratified the "outrageous misconduct" of the employee. This is the so-called complicity rule. (*Tolle v. Interstate Systems Truck Lines, Inc.* (1976), 42 Ill. App. 3d 771, 772-74, 356 N.E.2d 625.) This rule is based upon the reasoning of the supreme court in *Mattyasovszky v. West*

*Towns Bus Co.* (1975), 61 Ill. 2d 31, 36-37, 330 N.E.2d 509, which approved the rule initially expressed in the Restatement (Second) of Agency §217C (1958).

Pendowski's Instruction No. 7 was tendered to the jury in the following form:

> "The defendant is a corporation and can act only through its officers and employees. *Any* act or omission of any officer or employee within the scope of his employment is the action or omission of the defendant corporation." (Emphasis added.) Illinois Pattern Jury Instructions, No. 50.11 (2d ed. 1971).)

This instruction, while valid under other circumstances, was ill suited to convey the correct principles of law to the jury, since it would impute liability for *any* act done by an employee, rather than only those specifically ordered, participated in, or ratified by a superior officer. A reviewing court will ordinarily not reverse a trial court for tendering faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. (*Sherman v. City of Springfield* (1969), 111 Ill. App. 2d 391, 410, 250 N.E.2d 537.) The jury in this case could have based its verdict finding Company liable for wilful and wanton conduct upon an act not ordered, participated in, or ratified by Company. Therefore, we would be required to reverse the outcome below as to the punitive damages issue even had Pendowski presented adequate evidence of Company's alleged wilful and wanton conduct so as to warrant submission of the case to the jury.

### III.

Company contends that the trial court erred in denying mistrial motions based upon the allegedly improper and prejudicial manner in which Pendowski's case was conducted.

In light of our determinations above, resolution of this issue is not crucial to our decision. We will take this opportunity to comment upon it briefly nonetheless. In closing argument, Pendowski's attorney stated that Company's failure to call industry witnesses to deny that safety nets were in common use during scaffold construction indicated that such nets were in fact so used and that Company was not in compliance with industry custom. There was no evidence of record to support this contention. Company objected, and the trial court admonished the jury to disregard argument not based on the evidence. Pendowski's attorney charged in closing argument that Company had accrued "ill-gotten gains" in the past by failing to pay for additional safety provisions the attorney suggested were necessary and feasible. Company's objection was sustained. The attorney asked Company's manager on the witness stand whether their business attitude was "to hell with the pedestrians." Company's objection

was sustained prior to response. Pendowski, in his own testimony related that he was supporting his family before the accident, and that the injuries caused him to miss his father's funeral. Company's objections, based upon a pretrial order precluding any comment upon Pendowski's support of or relationship with his family, were sustained as to the first statement and overruled as to the second. Each of these instances involved statements which were either in violation of evidentiary rules or in contravention of the above-noted court order restricting testimony concerning Pendowski's family. We note these occasions as we believe their cumulative impact could have prejudiced the jury in resolving the punitive damages issue.

## IV.

Company contends that the wilful and wanton count of Pendowski's amended complaint (count III) fails to state a cause of action. Although the decisive issue in this appeal was the lack of evidence (Point I), we deem it appropriate to discuss this issue. The paragraph of that count which is the focus of this issue reads as follows:[1]

"11. That at the time and place aforesaid the defendants, and each of them, were then and there guilty of one or more of the following wrongful acts:

(a) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* dropped a large metal jack handle from the twentieth floor hanging scaffold onto the plaintiff below;

(b) *With a conscious indifference to surrounding circumstances wilfully and wantonly* failed to provide an adequate number of persons to safely erect the hanging scaffolding which was directly above a pedestrian walkway twenty stories below;

(c) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* worked with a metal jack handle directly over the public walkway twenty stories below without having provided any safety netting or other protection below the scaffolding so as to catch any materials or tools which may fall therefrom;

(d) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* failed to provide any warning to pedestirans [*sic*] lawfully walking across the alley below that dangerous construction was then going on twenty

---

[1] The employee who caused the jack handle to fall from the scaffold and the party who contracted with Company to erect the scaffold were originally also named as defendants, but were dismissed from the suit prior to judgment.

stories above the sidewalk without any safety netting or other protection which would have prevented tools or other materials from falling onto such pedestrian traffic below;

(e) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* failed to warn or otherwise direct pedestirans [*sic*] to cross to the south side of Van Buren Street, so as to be out of the way of materials or tools which the defendants knew, or in the exercise of ordinary care, ought to have known, were likely to fall from the unprotected scaffolding above;

(f) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* failed to provide a pedestrian shelter which would have protected pedestrians lawfully walking along the north sidewalk of Van Buren Street, from materials or tools which the defendant knew, or in the exercise of ordinary care, ought to have known, were likely to fall from the unprotected scaffolding above;

(g) *With a conscious indifference to surrounding circumstances, wilfully and wantonly* failed to install barricades, ropes, rubber cones or any other devices which would have diverted pedestrians from walking along the north side of Van Buren Street at a time and place when the defendants knew or should have known that materials or tools would have been likely to fall from the scaffolding above." (Emphasis added.)

Except for the italicized language, the allegations are identical to those found in the negligence count. Count II, the negligence count, used the words "carelessly and negligently" rather than the italicized language. Company asserts that this method of pleading alleges no more than legal conclusions and is therefore inadequate to state a cause of action.

In order to state a cause of action under the Civil Practice Act (CPA) (Ill. Rev. Stat. 1979, ch. 110, par. 1 *et seq.*), a plaintiff's complaint must contain substantial averments of fact constituting a recognized cause of action. (Ill. Rev. Stat. 1979, ch. 110, par. 31; *Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 310, 200 N.E.2d 149, *aff'd* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) The pleading should be plain and concise. (Ill. Rev. Stat. 1979, ch. 110, par. 33(1).) The CPA also provides that pleadings are to be liberally construed so as to do substantial justice between the parties (Ill. Rev. Stat. 1979, ch. 110, par. 33(3)), and that no pleading is bad in substance if it contains such information as would reasonably inform the opposite party of the nature

of the claim asserted against him (Ill. Rev. Stat. 1979, ch. 110, par. 42(2)). However, the primary requirement is that there must be substantial averments of fact necessary to state a cause of action. *Hyland v. Waite* (1953), 349 Ill. App. 213, 218-19, 110 N.E.2d 457, *appeal denied* (1953), 414 Ill. 630.

■■ In pleading a cause of action in negligence, the plaintiff must plead facts from which the law would raise a duty owing plaintiff from defendant, facts which disclose breach of that duty by defendant, and facts which disclose harm to plaintiff resulting from defendant's breach. (*Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 669, 347 N.E.2d 396.) The distinction between an ordinary negligence cause of action and a cause of action based upon wilful and wanton conduct is found in the differing allegations required as to the state of mind of the defendant at the time of the breach of duty. (*Rowlett v. Hamann* (1969), 112 Ill. App. 2d 121, 125, 251 N.E.2d 358.) Assuming for discussion that all other averred facts would be the same, a count in ordinary negligence will indicate that defendant acted "carelessly," while a count for wilful and wanton misconduct will indicate that defendant acted with either intentional or conscious disregard of his duty to plaintiff. (*Bernesak v. Catholic Bishop of Chicago* (1980), 87 Ill. App. 3d 681, 409 N.E.2d 287.) Here, this court must determine whether the mere substitution of the words "with a conscious indifference to surrounding circumstances, wilfully and wantonly" for the words "carelessly and negligently" before identical facts alleged in the negligence count is a sufficient averment of the requisite wilful and wanton state of mind of Company through its agents to state a cause of action for punitive damages.

There is precedent nearly on point to support a decision that such pleading is insufficient as well as precedent to support a decision that the count as offered is acceptable. Company in its brief cites *Ingram v. New York Central R.R. Co.* (1961), 30 Ill. App. 2d 455, 175 N.E.2d 129, *appeal denied* (1961), 21 Ill. 2d 621, for the proposition that Pendowski's count III is insufficient. That case involved a pleading containing a count for negligence and a count for wilful and wanton misconduct. The "same similar allegations of neglect" were made in both counts, with the only variation being the addition of the words "wilful and wanton." The court determined that the mere addition of such language was insufficient to demonstrate that defendant had exhibited the requisite mental state. It did not allow the proferred cause of action for wilful and wanton misconduct to stand.[2]

---

[2] See also *Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 388 N.E.2d 31; *Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437, 318 N.E.2d 153, *appeal denied* (1975), 57 Ill. 2d 607.

In direct contrast is the case of *Church v. Adler* (1953), 350 Ill. App. 471, 113 N.E.2d 327, cited by Pendowski. That case involved a complaint which contained, among other things, a negligence count and a wilful and wanton misconduct count. The latter count realleged the acts of defendant found in the earlier count, replacing the words "negligently" or "negligently and carelessly" with the words "wilfully and wantonly." The court found that the factual allegations of the complaint were sufficient to set forth a cause of action, and that the use of the term "negligently and carelessly" or the substitution therefor the term "wilfully and wantonly" was acceptable when "properly employed in context with allegations stating circumstances which they characterize." (*Church*, at 480.) A case of similar result also cited by Pendowski is *Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 898-99, 354 N.E.2d 148.

Faced with these conflicting cases, we must resolve the clash between the statutory policy of liberal construction of pleadings and the statutory requirement that pleadings aver substantial facts which state a cause of action, as these provisions apply to the instant complaint. We are of the opinion that Pendowski's count III, containing the language "with a conscious indifference to surrounding circumstances," is so broadly stated that it fails to sufficiently correlate Company's alleged state of mind to a specific, recognizable duty owed to Pendowski. The addition of the words "wilfully and wantonly" to the factual allegations does not cure this defect. Under these circumstances, the statutory policy that pleadings be liberally construed must give way to the primary requirement that a pleading contain substantial averments of fact. We deem count III of Pendowski's complaint to be insufficient to state a cause of action.

In light of our determinations in the earlier portions of this opinion, it is unnecessary to decide whether Pendowski would be entitled to amend his complaint again to rectify the problems we have perceived.

For all of the above reasons, we reverse the judgment of the trial court as to the action for punitive damages and enter judgment for Company on count III of the amended complaint.

Reversed as to count III.

PERLIN, P. J., and HARTMAN, J., concur.