(No. 60819.—

RONALD E. MORROW *et al.*, Appellees, v. L. A. GOLDSCHMIDT ASSOCIATES, INC., *et al.*, Appellants.

*Opinion filed April 18, 1986.*

GOLDENHERSH, J., dissenting.

Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, George J. Anos and Lawrence M. Freedman, of counsel), for appellant First Charter Service Corporation.

Gordon & Glickson, of Chicago (Stuart Smith, of counsel), for appellants L. A. Goldschmidt Associates, Inc., *et al.*

Siegan, Barbakoff, Gomberg, Gordon & Elden, Ltd., of Chicago (Steven P. Gomberg and John F. Stimson, of counsel), for appellees.

Gregory W. Hummel, Thomas F. Geselbrascht and Richard S. Huszagh, of Rudnick & Wolfe, of Chicago, for *amici curiae* Home Builders Association of Greater Chicago and Home Builders Association of Illinois.

Thomas H. Fegan, of Johnson, Cusack & Bell, Ltd., of Chicago, for *amicus curiae* Illinois Defense Counsel.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, purchasers of four townhouses designed, constructed and sold by defendants, filed an 11-count complaint in the circuit court of Cook County seeking damages for breaches of express warranty and an implied warranty of habitability. Upon allowance of defendants' motion to dismiss filed pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), the circuit court dismissed with prejudice counts VIII through XI of the complaint in which plaintiffs alleged wilful and wanton misconduct and sought punitive damages. The circuit court made the

finding required under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), and plaintiffs appealed. The appellate court reversed (126 Ill. App. 3d 1089), holding that the counts stated a cause of action for wilful and wanton misconduct and punitive damages, and we allowed defendants' petition for leave to appeal (94 Ill. 2d R. 315).

At issue is whether counts VIII through XI of plaintiffs' complaint state a cause of action for wilful and wanton misconduct which would, if proved, support an award of punitive damages. Plaintiffs maintain that, in addition to their express and implied warranty claims, they have alleged "a separate tort of wilful and wanton misconduct" which would, if proved, justify an award of punitive damages. Defendants, however, contend that plaintiffs have failed to allege the existence of an independent tort for which punitive damages can be awarded. They argue that the allegations in counts VIII through XI, at most, amount to an intentional breach of contract for which punitive damages are not available.

In their third amended complaint plaintiffs allege that they entered into four separate contracts for the purchase of townhouses in a development known as the Commons of Palos Park. Three of the defendants are Leo A. Goldschmidt, alleged to be a contractor and developer, L. A. Goldschmidt Associates, Inc., a corporation engaged in the construction business, and First Charter Service Corporation, a bank service corporation. Title to the real estate was conveyed by these defendants to defendant American National Bank, as trustee. The defendants, with the exception of American National Bank, formed an entity known as the Commons of Palos Park (Commons), and that entity planned, designed and constructed the housing development.

Three of the townhouses were purchased by plaintiffs prior to completion directly from defendants. One was

purchased by an intervening purchaser who assigned his interest to the fourth plaintiff.

At the time of each closing, the Commons executed an express warranty. Under the one-year warranty, the Commons warranted that the roof and roof flashings would be free from leaks; that the basement would be waterproof and free from infiltration of water due to penetration through walls or floors; and that all plumbing would be in proper working order and free from all defects of workmanship and materials. The warranty also provided that the Commons would "correct all structural defects *** due to faulty construction and/or defective materials" during the warranty period if given notice of the defects by the homeowner.

In counts I through VII, the express and implied warranty counts, plaintiffs allege numerous defects in the construction of their townhouses, several of which were present in all four units when the units were sold. The complaint alleges that the floors in all four townhouses are improperly supported because defendants either failed to install or improperly installed certain components of the floor-support system. The complaint alleges that as a result of the improper floor supports, the floors "shake, vibrate and/or sag to a degree which is far in excess of that which is usual and customary when walked upon *** causing cracking of floor tiles and other substantial damage." Other structural defects which are alleged to be common to all four units include a nonfunctioning "reverse osmosis water system," and carpentry work which was defective and not performed in a good and workmanlike manner.

The complaint also alleges the existence of several defects which are particular to one or more, but not all, of the units. These alleged defects include: basement flooding; heating and cooling systems which do not function properly; an improperly installed sump pump; an improp-

erly installed water system which resulted in a high concentration of suspended particles in the water and caused appliances to malfunction; improperly fitted gas and water fixtures resulting in gas and water leakage; and various instances where the dimensions of a particular unit were not constructed according to the contract specifications. The complaint further alleges that defendants failed to correct the defects despite repeated demands by plaintiffs to do so.

In counts VIII through XI, plaintiffs request punitive damages. In support of their claim for punitive damages plaintiffs allege, *inter alia*, that defendants "inadequately supervised the construction" of the plaintiffs' homes; "knowingly employed incompetent contractors, subcontractors and/or agents who performed the actual construction" of the homes, or were incompetent themselves; and "wantonly, willfully and/or recklessly failed to inspect" the homes or insure that the units were built "in a good and workmanlike manner and in accordance with the contract specifications." The complaint alleges that defendants' "wanton, willful and/or reckless conduct" is evidenced by their failure to install or to properly install a certain component of the floor-support system since such improper installation "is readily observed and could, and should have been detected by any competent supervisor/inspector familiar with the plans and specifications." Plaintiffs further allege that defendants were aware of the improperly constructed floor-support system as well as other enumerated defects, because similar defects were reported in another unit prior to the closings on plaintiffs' units, and because defendants were informed by various public officials of certain building code violations. In particular, the complaint alleges that a Palos Park building inspector informed defendants by letter on September 11, 1978, of several code violations in the complex, including the "lack of support un-

der some floor areas." Finally, the complaint alleges that after defendants became aware of the defects in plaintiffs' units and other units in the complex, they "failed to inspect for similar defects *** and/or properly and adequately correct same."

Both defendants and plaintiffs agree that under Illinois law counts VIII through XI must be construed as alleging a tort in order to properly state a cause of action for punitive damages. As a general rule, punitive damages are not recoverable for breach of contract. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 187; *Hayes v. Moynihan* (1869), 52 Ill. 423, 426; *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 829; 11 Williston, Contracts sec. 1340 (3d ed. W. Jaeger 1968); 5 Corbin, Contracts sec. 1077 (1964); Note, *Punitive Damages in Contract Actions—Are the Exceptions Swallowing the Rule?*, 20 Washburn L.J. 86 (1980).) The sole purpose of contract damages is to compensate the nonbreaching party, and punitive damages are not available even for a "wilful" breach of contract. The Restatement (Second) of Contracts explains the rule as follows:

> "The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach. 'Willful' breaches have not been distinguished from other breaches, punitive damages have not been awarded for breach of contract, and specific performance has not been granted where compensation in damages is an adequate substitute for the injured party." Restatement (Second) of Contracts, ch. 16 (introductory note) (1979); see also E. Farnsworth, Contracts sec. 12.8, at 842 (1982).

The rule against awarding punitive damages for breach of contract has been applied to situations, like the present case, where homeowners have sued builders or contractors for construction defects. Courts traditionally

have refused to award punitive damages in such cases where the allegations against the builder or contractor amounted to nothing more than a breach of contract. See, *e.g., McLendon Pools, Inc. v. Bush* (Ala. Civ. App. 1982), 414 So. 2d 92; *Richards v. Powercraft Homes, Inc.* (1983), 139 Ariz. 264, 678 P.2d 449; *Caradonna v. Thorious* (1969), 17 Mich. App. 41, 169 N.W.2d 179; *Freeman v. Westland Builders, Inc.* (1981), 2 Ohio App. 3d 212, 441 N.E.2d 283; *Tibbs v. National Homes Construction Corp.* (1977), 52 Ohio App. 2d 281, 369 N.E.2d 1218.

An exception to the general rule that punitive damages are not recoverable for breach of contract is when the conduct causing the breach is also a tort for which punitive damages are recoverable. (*McIntosh v. Magna Systems, Inc.* (N.D. Ill. 1982), 539 F. Supp. 1185 (applying Illinois law); *St. Ann's Home For The Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 580; Restatement (Second) of Contracts sec. 355 (1979).) That is, punitive damages are recoverable "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression." *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 829; see also *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.* (N.D. Ill. 1984), 586 F. Supp. 926 (applying Illinois law); Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change,* 61 Minn. L. Rev. 207, 236-40 (1977); Coleman, *Punitive Damages For Breach of Contract: A New Approach,* 11 Stetson L. Rev. 250, 252-61 (1981).

Plaintiffs argue that the allegations in counts VIII through XI state a cause of action for the "tort" of "wilful and wanton misconduct." Defendants, however, argue that plaintiffs have not alleged a separate tort for which punitive damages are available. They note that the complaint does not allege that the defects in workman-

ship and construction caused personal injury or damage to property other than to the townhouse units themselves. As such, they argue that plaintiffs have incurred only "economic losses" for which there is no tort recovery.

The line of demarcation between tort and contract is sometimes difficult to make, and occasionally, the conduct complained of can constitute both a breach of contract and a tort. (See W. Prosser and W. Keeton, Torts sec. 92, at 655 (5th ed. 1984); Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change,* 61 Minn. L. Rev. 207, 239.) Nevertheless, this court held in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, that recovery for solely economic losses is more appropriately governed by contract, rather than tort, law principles.

In *Moorman,* the plaintiff purchased a steel grain-storage tank from defendant. A crack subsequently developed in the tank, and the plaintiff sued defendant, seeking damages for the cost of repair and for the loss of use of the tank. Plaintiff, *inter alia,* sought recovery under the tort theories of strict liability and negligence. In affirming the dismissal of the strict liability and negligence counts, this court noted that the complaint alleged only a qualitative defect in the product itself, and did not allege that the defective product caused personal injury or damage to other property. The court observed that contract, not tort, law was best suited to govern economic relations between suppliers and consumers of goods and concluded that "[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery." *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88.

Subsequently, in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, this court held that the economic-loss doctrine announced in *Moorman* applied to a case where a homeowner sued a builder on the theory that the builder was negligent in constructing the plaintiff's home. The plaintiff in *Redarowicz* sought recovery for the costs of repair or replacement of a defectively constructed chimney, wall and patio. In dismissing the negligence counts, the court stated that it saw "no sound reason" for distinguishing between a "disappointed consumer of a storage tank or a disgruntled purchaser of a certain house" (92 Ill. 2d 171, 177) and held that when a purchaser of a defectively constructed residence sues the builder and alleges solely economic losses, the purchaser cannot recover under a negligence theory in tort. The court explained:

"This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture. The plaintiff is seeking damages for the costs of replacement and repair of the defective chimney, adjoining wall and patio. While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for." (92 Ill. 2d 171, 178.)

See also *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150; W. Prosser and W. Keeton, Torts sec. 92, at 659 n.15 (5th ed. 1984); Bertschy, *The Economic Loss Doctrine In Illinois After Moorman*, 71 Ill. B.J. 346, 351-52 (1983).

Similarly, in the present case, plaintiffs seek to recover only the costs of repairs to their homes caused by defendants' alleged faulty workmanship. Like the plaintiff in *Redarowicz*, the plaintiffs here have not alleged a

harm "above and beyond disappointed expectations." (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177.) They do not complain that the defects caused an accident which resulted in physical injury or damage to other property. Indeed, contrary to the findings of the appellate court, nowhere in plaintiffs' complaint is it alleged that the defects were a threat to health or safety. As such, the plaintiffs essentially are complaining that they did not receive the benefit of their bargain—a harm which is appropriately remedied by bringing an action for breach of contract.

Plaintiffs argue that the present case is distinguishable from *Moorman* and *Redarowicz* because the defendants' conduct in those cases was merely negligent whereas the defendants' conduct here was allegedly "wilful and wanton." We disagree. Simply characterizing a breach of contract as "wilful and wanton" does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest. We cannot agree that a breach of contract becomes a tort just because the breach was wilful and wanton. (See *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.* (N.D. Ill. 1984), 586 F. Supp. 926, 929; *Tibbs v. National Homes Construction Corp.* (1977), 52 Ohio App. 2d 281, 290-91, 369 N.E.2d 1218, 1225.) Where the construction defects do not cause physical injuries or damage to other property, we are unwilling to impose tort liability on a builder for breach of his contract with the purchaser, even if the breach was wilful and wanton.

Moreover, we decline to adopt plaintiffs' alternative argument that punitive damages should be awarded for certain wilful and wanton breaches of contract, even though the breach is not accompanied by an independent tort. Although punitive damages appear to be recoverable in a few other jurisdictions for certain wilful breaches of contract (see, *e.g., Quedding v. Arisumi*

*Brothers, Inc.* (1983), 66 Hawaii 335, 661 P.2d 706; *Davies v. Bradley* (Colo. App. 1983), 676 P.2d 1242; *F. D. Borkholder Co. v. Sandock* (1980), 274 Ind. 612, 413 N.E.2d 567), we continue to adhere to the view that tort and contract law are founded on different policies which justify separate rules with respect to recovery of punitive damages. (See Corbin, Contracts sec. 1077, at 437-38 (1964).) We hold that counts VIII through XI of plaintiffs' complaint do not state a cause of action for the tort of wilful and wanton misconduct and punitive damages.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court in dismissing counts VIII through XI of plaintiff's complaint with prejudice is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. I would affirm the judgment of the appellate court and remand the cause for trial. The dismissed counts contained factual allegations of potentially life-threatening structural defects and actions on the part of defendants which constitute wilful and wanton misconduct. If, as a result of one of the alleged defects, one of the plaintiffs had suffered personal injuries, or his property had been damaged or destroyed, the majority would agree that he had a cause of action. If the facts alleged, except for the absence of personal injuries or property damage, state a cause of action, the fortuitous circumstances that no such injury or damage was suffered should not bar it. This case is distinguishable from *Moorman* and *Redarowicz*, upon which the majority relies, in that in those cases the complaints contained no factual allegations that the defects were dangerous or life-threatening or which would support a finding of wilful

and wanton misconduct. The majority opinion acknowledges that punitive damages may be recovered "when the conduct causing the breach is also a tort for which punitive damages are recoverable." (112 Ill. 2d at 95.) I agree with the appellate court that the dismissed counts alleged a tort under this standard. Assuming, however, that they did not adequately allege a separate tort, I would adopt plaintiffs' alternative argument that punitive damages should be awarded for wilful and wanton breach of contract even though there was no independent tort.

The majority quotes from the Restatement (Second) of Contracts: " 'Willful' breaches have not been distinguished from other breaches, punitive damages have not been awarded for breach of contract, and specific performance has not been granted where compensation in damages is an adequate substitute for the injured party."

The foregoing quotation demonstrates precisely the defect in the position taken by the majority. Absent the assessment of punitive damages, a wilful violator of a contract incurs no sanction and bears only the costs of performance under the terms and conditions of his agreement. In many instances, the sum awarded is not subject to prejudgment interest, and absent a specific provision, the wronged party cannot recover his attorney fees. No rational basis presents itself for holding that wilful misconduct arising out of a breach of contract should not be discouraged in the same manner as wilful misconduct resulting in a tort.

In this jurisdiction both legislative enactments and the decisions of this court have recognized the function and efficacy of punitive damages. In *Mattyasovzky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, the court stated:

"[P]unitive damages are awarded primarily to punish the offender and to discourage other offenses. Restatement

(Second) of Torts, sec. 908 (Tent. Draft No. 19, 1973); Prosser, Law of Torts 9 (4th ed. 1971).

The underlying strength of these objectives of punishment and deterrence varies substantially from case to case. Where, for example, the defendant has benefited by his misconduct, a judgment which only compensates the plaintiff for what he has lost would permit the defendant to keep his wrongful gain." 61 Ill. 2d 31, 35.

It is time that we acknowledge and excise from the body of law of this State the artificial distinction perpetuated by the majority opinion. As the result of the reversal of the judgment, plaintiffs will be the inadequately compensated victims of defendants' misconduct, and defendants will be permitted to keep their wrongful gains. I respectfully dissent.