Michael A. KLEEBLATT, et al., Plaintiffs,

v.

BUSINESS NEWS PUBLISHING COMPANY, etc., et al., Defendants.

No. 85 C 6316.

United States District Court, N.D. Illinois, E.D.

Sept. 9, 1987.

John Thomas Moran, Law Offices of John Thomas Moran, Raymond Smith, Ganan Shapiro & Smith, Chicago, Ill., for plaintiffs.

David R. Barry, Jr., Brinton & Bollinger, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiffs Michael A. Kleeblatt and Fred J. Gregg commenced this diversity action against defendants, Business News Publishing Company ("Business News") and its president and publisher, James E. Henderson ("Henderson"). Plaintiffs allege, *inter alia*, Business News breached a written agreement to purchase and market a periodical which plaintiffs had conceived. Business News has counterclaimed against both plaintiffs, alleging fraud, breach of contract, and lack of authority. Defendants now move for dismissal of plaintiffs' First Amended Complaint ("the Complaint") for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).

### I. *Factual Background*

In the Complaint plaintiffs allege the following facts.

Plaintiffs conceived the idea for "Ciindex," a cable television industry product catalog. On May 24, 1984, plaintiffs and Business News entered into a written agreement ("the agreement"), drafted by Henderson, for Business News to purchase Ciindex. *See* (original) Complaint, Exhibits 1-A—1-C. As consideration, Business News agreed to employ plaintiffs for a period of five years at a salary of $45,000 each per year, and to share the profits from Ciindex with plaintiffs based on a stated formula. Furthermore, Business News received all title and interest in Ciindex, although plaintiffs retained a right of first refusal if Business News chose to sell Ciindex.

After the agreement commenced, plaintiffs worked for Business News selling advertising space in Ciindex to the cable industry. On March 1, 1985, Business News decided to terminate its relationship with plaintiffs, and it so informed them on April 10 or 11, 1985. Business News offered to (1) hire plaintiffs as independent contractors to sell advertising space in future Ciindex issues, (2) sell Ciindex to plaintiffs for $115,000, or (3) sell Ciindex on the open market and allow plaintiffs to participate in the bidding. Business News ceased all payments to plaintiffs on April 27, 1985.

At some time after April 10 the parties negotiated plaintiffs' possible purchase of Ciindex, but to no avail. At an unspecified time plaintiffs notified defendants that it would be important to the continued viability of Ciindex to represent it at the National Cable Television Convention ("the Convention"), to be held in June, 1985. Plaintiffs offered to attend the Convention, but defendants refused and did not send any representatives. Defendants knew or should have known that plaintiffs had informed the industry that Ciindex would be distributed at the Convention, and that plaintiffs continued to do so after March 1, 1985. The failure to send representatives to the Convention irreparably impaired the value of Ciindex, and permanently besmirched plaintiffs' reputations in the cable television industry.

### II. *Discussion*

On a motion to dismiss, the court must take the complaint's "allegations to be true, and view them, together with reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff."

*Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Dismissal for failure to state a claim is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Plaintiffs' First Amended Complaint consists of six separate counts. Pursuant to Fed.R.Civ.P. 41(a)(2), plaintiffs have voluntarily dismissed defendant Henderson only from Counts I, II, and III. *See* Plaintiffs' Memorandum in Response to Defendants' Motion to Dismiss. Therefore, plaintiffs contend that the First Amended Complaint states a cause of action in each count as against Business News, and in Counts IV, V, and VI as against Henderson. The court will address each count in turn.

### A. Count I: Breach of Contract: Sale of Assets

■ In Count I, plaintiffs characterize the agreement, at least in part, as a sale of assets. Therefore, plaintiffs allege Business News breached the agreement when it stopped paying plaintiffs their "salaries."

Business News first contends the agreement with plaintiffs can only be characterized as an employment contract, and hence an action for the breach of a sales contract cannot lie. However, the text of the agreement does not compel this conclusion. The agreement began by stating that plaintiffs' employment arrangement was "In consideration for the concept of Ciindex...." *See* (original) Complaint, Exhibit 1–A. In its final paragraph,

> ... this agreement denotes complete ownership of title, circulation and revenue derived from this cable industry product catalog. In other words, BNPCo [Business News] has full publishing

rights to same, not only during, but also beyond the five years of this agreement, unless BNPCo sells it or otherwise discontinues it.

*Id.,* Exhibit 1–C. Thus, ample evidence in the agreement suggests it embodied the sale of an asset.

Business News next argues that since plaintiffs also characterize the agreement, at times, as an employment contract, they are contradicting themselves. In Illinois,[1] the meaning to be given to the plain words of a written contract is a question of law. *Mazanek v. Rockford Drop Forge Co.,* 98 Ill.App.3d 956, 959, 54 Ill.Dec. 368, 424 N.E.2d 1271 (2nd Dist.1981), *appealed after remand,* 131 Ill.App.3d 495, 86 Ill.Dec. 748, 475 N.E.2d 1127 (2nd Dist.1985). The agreement provided for plaintiffs to give the rights to Ciindex and their efforts to market it, and receive a total of $450,000, plus bonuses, and a limited right to buy back Ciindex. The court thus believes the contract embodied, at least in part, a sale of assets. Furthermore, it is impossible to apportion the figure of $450,000 (plus possible bonuses and minus amounts already paid) as consideration for either Ciindex or plaintiffs' labor. As a result, there is no contradiction in plaintiffs pleading parallel theories of liability for the same damage award.

Therefore, Count I states a valid cause of action. The motion to dismiss Count I is denied.

### B. Count II: Breach of Contract: Employment

Count II alleges that Business News also breached the agreement when it terminated plaintiffs' employment. Business News does not deny the agreement included an employment contract. Nevertheless, Business News moves to dismiss this claim

---

1. In a diversity case this Court must apply the substantive law of the forum state, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its conflict of law rules. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "When the parties fail to consider the choice of law in a diversity case, the substantive law of the forum is presumed to control." *Baltimore Orioles v. Major League Baseball Players,* 805 F.2d 663, 681 n. 33 (7th Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 1593, 94 L.Ed.2d 792 (1987); *Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir.1987). Therefore, as the parties in this diversity case have assumed that Illinois law applies, the court will not disturb this assumption.

alleging it was indisputably within its contract rights in firing plaintiffs. The agreement states, in pertinent part, that

> ... at any time during the five years BNPCo [Business News] can pull out of this venture and discontinue its publication of Ciindex. ... But, I [Henderson] would personally retain the right to travel to any potential advertiser or conventions of such advertisers to discuss their opinions and thoughts of Ciindex. ... these costs would be so allocated to the costs of publishing Ciindex. ... * * * ... as we move along we will try to reach the proper agreement between this office and your office as to what these costs are and the necessity for them.

(original) Complaint, Exhibits 1–B—1–C.

As noted above, the meaning of plain words in a written contract is a question for the court. But here the agreement is ambiguous. It seems to discuss the allocation of costs accrued *after* a hypothetical discontinuance of publication. The cited language could thus be read to allow Business News to temporarily or permanently "discontinue its publication of Ciindex"— i.e., "pull out of this venture"—while the underlying contractual relationship with plaintiffs endured. It is simply unclear at this juncture whether Business News had an express contractual right to terminate plaintiffs' employment.

Therefore, the motion to dismiss Count II is denied.

### C.  Count III: Wrongful Discharge: Tortious Violation of Implied Covenant of Good Faith

■ In Count III, plaintiffs allege that Business News violated the covenant of good faith and fair dealing implied in the agreement. Specifically, plaintiffs contend Business News (1) unlawfully terminated their employment; (2) failed to give them sufficient opportunity to exercise their contractual right to buy back Ciindex; and (3) effectively destroyed the value of this right by failing to represent Ciindex at the Convention, thus rendering the concept worthless.

Under Illinois law, every contract contains an implied promise of good faith and fair dealing between the contracting parties. *Martindell v. Lake Shore National Bank,* 15 Ill.2d 272, 283, 154 N.E.2d 683 (1958). Nevertheless, Business News contends that no action exists in Illinois for breach of an implied covenant of good faith. Business News' authority for this position is *Martin v. Federal Life Insurance Co.,* 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1st Dist.1982). There, the court held, in part, that Illinois does not recognize a wrongful discharge as an employer's breach of an implied covenant of good faith. 109 Ill.App.3d at 606, 65 Ill. Dec. 143, 440 N.E.2d 998.

However, *Martin* does not control the present dispute because, as noted, the agreement contains more than an employment contract. The agreement includes Business News' promise to market an asset: Ciindex. In a contract to market an asset the implied covenant of good faith imposes a duty on the parties to cooperate. When the duty to cooperate is not fulfilled, the covenant is breached and an award of damages will be sustained. *See Spircoff v. Spircoff,* 74 Ill.App.3d 119, 29 Ill.Dec. 806, 392 N.E.2d 363 (1st Dist.1979).

In the case at bar, plaintiffs were to receive an annual bonus based on the success of the Ciindex venture. In addition, plaintiffs retained a limited right to buy back Ciindex. Since plaintiffs had a direct pecuniary interest in the success and continuing viability of Ciindex, Business News' implied promise of good faith carried with it a duty to cooperate in the marketing of Ciindex. If Business News' failure to represent Ciindex at the Convention damaged its profitability and/or value, Business News may have breached its implied duty of good faith. Therefore, the motion to dismiss Count III is denied.

### D.  Count IV: Tort of Wilful and Wanton Misconduct

Count IV alleges both defendants wilfully and wantonly destroyed the value of Ciindex, and thus plaintiffs' rights under the agreement. To prove the tort of "wil-

ful and wanton misconduct," a plaintiff must establish that (1) defendant's breach of a duty owed to plaintiff proximately resulted in injury to plaintiff, *Hubbard v. Aetna Insurance Co.,* 37 Ill.App.3d 666, 669, 347 N.E.2d 396 (1st Dist.1976); and (2) said breach was intentional or reckless. *Pendowski v. Patent Scaffolding Co.,* 89 Ill.App.3d 484, 487, 44 Ill.Dec. 544, 411 N.E.2d 910 (1st Dist.1980).

However, merely characterizing a breach of contract as "wilful and wanton" does not alchemize it into a tort. *Morrow v. Goldschmidt Associates, Inc.,* 112 Ill.2d 87, 98, 96 Ill.Dec. 939, 492 N.E.2d 181 (1986). In *Morrow,* the purchasers of four townhouses sued the builders for various construction defects. The Illinois Supreme Court would not recognize an action for wilful and wanton misconduct where the plaintiffs had sustained merely "economic loss." *Id.* at 95–96, 96 Ill.Dec. 939, 492 N.E.2d 181. The Court explained:

> Where the construction defects do not cause physical injuries or damage to other property, we are unwilling to impose tort liability on a builder for breach of his contract with the purchaser, even if the breach was wilful and wanton.

*Id.* at 98, 96 Ill.Dec. 939, 492 N.E.2d 181. *Compare Chicago Heights Venture v. Dynamit Nobel of America, Inc.,* 782 F.2d 723, 728 (7th Cir.1986) (under Illinois law, an action for contract breach, and not tort, lies for a failure of "commercial expectations").

■ If defendants in the instant case breached their contractual duty, whether express or implied, to "construct" Ciindex out of the concept plaintiffs sold to them, then plaintiffs' remedy is to sue on the contract (*See* Counts I–III). Admittedly, a construction contract is an imperfect analogue, and the distinction between tort and contract breach remains murky at best. This court nevertheless believes that because development of Ciindex was a basic goal of the instant contract, even a "wilful and wanton" failure to reach this goal must be characterized as a contract breach —i.e., a failure of "commercial expectations"—rather than the "injury or damage

to other property," 112 Ill.2d at 98, 96 Ill.Dec. 939, 492 N.E.2d 181, *Morrow* demands to constitute a tort. Any allegations that defendants' acts or omissions destroyed the Ciindex concept and/or impaired plaintiffs' contractual rights to reacquire Ciindex go to the nature and severity of the contract breach.

■ Still, Count IV cannot be dismissed because, taking all plaintiffs' allegations as true, together with reasonable inferences drawn therefrom, it appears plaintiffs may have suffered a *Morrow*-type injury. Jumping ahead to Count VI, alleging common-law negligence, plaintiffs contend Henderson (and thus, Business News) knew that plaintiffs were informing potential advertisers that Ciindex would be exhibited at the Convention. Therefore, since defendants did not tell plaintiffs of the March 1, 1985 decision to terminate Ciindex until April, 1985, defendants knowingly allowed plaintiffs to make false representations to potential customers for nearly two months. Plaintiffs contend defendants' negligence proximately caused them to appear ridiculous, and destroyed their reputations in the cable industry.

Under the common law of negligence, "Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and forseeable consequence of his actions...." *Driscoll v. Rasmussen Corp.,* 35 Ill.2d 74, 78, 219 N.E.2d 483 (1966). *See also Waynick v. Chicago's Last Department Store,* 269 F.2d 322, 325 (7th Cir.1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960). It appears that plaintiffs may be able to prove facts showing that Henderson and/or Business News had and breached a duty to promptly inform plaintiffs of the decision to terminate Ciindex. Unlike the Ciindex concept, plaintiffs' reputations were not putatively at stake in the transaction. Therefore, plaintiffs' "commercial expectations" were irrelevant to any damage done to their reputations, and an action in tort is appropriate. Furthermore, if Henderson breached the duty in question in the scope of his employment, Business News could

also be held liable under the doctrine of *respondeat superior. See, e.g., Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 817 (7th Cir.1985), *cert denied,* — U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Sunseri v. Puccia,* 97 Ill.App.3d 488, 493, 52 Ill.Dec. 716, 422 N.E.2d 925 (1st Dist.1981). Therefore, the motion to dismiss Count VI, claiming negligence, is denied.

 The allegations in Count VI save plaintiff's claim for wilful and wanton misconduct as well. If Henderson and/or Business News *knew* that plaintiffs were, in their ignorance of developments at Business News, making false statements about Ciindex, then defendants' failure to inform plaintiffs may have been reckless or even intentional. If so, then defendants possessed the *mens rea* necessary to support a claim for wilful and wanton misconduct, and thus an award of punitive damages. Therefore, the motion to dismiss Count IV is denied.

### E. Count V: Defamation

Plaintiffs take the same facts they use to state a cause of action for negligence, in Count VI, and try to mold them into a cause of action for defamation as well. To recapitulate, allegedly defendants' knowing failure to inform plaintiffs that Ciindex was terminated, even as plaintiffs continued to notify potential advertisers that Ciindex would be distributed at the Convention, effectively made liars out of the plaintiffs. When Ciindex was not represented at the Convention, plaintiffs' reputations in the industry were "besmirtched."

But the very fact that defendants' entire alleged wrongdoing here was a failure to speak takes it out of the realm of defamation. A defamation requires an injurious publication or communication. *Whitby v. Associates Discount Corp.,* 59 Ill.App.2d 337, 340, 207 N.E.2d 482 (3rd Dist.1965). The essence of Count V is that defendants *failed* to communicate—to plaintiffs or anyone else—the termination of Ciindex. Without the element of a defamatory communication there can be no defamation.

Therefore, the motion to dismiss Count V is granted.

### III. *Conclusion*

Defendants' motion to strike and dismiss Plaintiffs' First Amended Complaint is granted only as to Count V. With respect to Counts I–IV and VI, defendants' motion is denied. Plaintiffs voluntarily dismiss defendant Henderson only as to Counts I–III. Therefore, Counts I–III are dismissed as against defendant Henderson only, and Count V is dismissed in its entirety.